WILLIAM P. RADLEY et al., Respondents, *v.* PETER KUHN et al., Executors, etc., Appellants.

The will of K. contained a devise to his executors of certain real estate, in trust to receive the rents and profits and out of the same to pay to each of two grandsons of the testator $700 when he became of age. In case either died before majority the survivor to have the whole $1,400; the trust to continue until the testator's son C. arrived at the age of twenty-five, unless he died before that time. If C. lived to reach that

Statement of case.

age he was to have the net income, less the $1,400, during life, and the will declared "if he should die leaving any lawful children the said real estate * * * is to become theirs in fee when they arrive at the age of twenty-one, and the same is devised accordingly." Upon appeal from a surrogate's decree construing the will, *held*, that the provision for the benefit of the grand-children, conceding it was to be considered as a trust, was simply a mode of securing the payment of the legacies, not a provision for the maintenance of the infants, and so did not render the estate inalienable; that the interests of the *cestuis que trustent* were assignable, the trust being for the payment of a sum in gross (1 R. S. 730, § 63) ; that the plain meaning of the will was, when C. attained the age of twenty-five the trust should cease, he thereafter taking the income as tenant for life, charged with the payment of any amount unpaid of said legacies, the remainder in fee being devised to his children, if he have any, when they come of age ; that C., as owner of the next eventual estate, was entitled to any surplus of income arising during the continuance of the trust; that on the death of C., if he died without issue, the fee would vest in the heirs of the testator ; if he should have a child or children the fee would vest in them absolutely and be alienable and descendible ; in case of their dying under age the fee vests in their heirs and not those of the testator ; that, therefore, there was no unlawful suspension of the power of alienation. ·

*It seems*, that it is only a trust to accumulate rents and profits of land and apply them to the use of a person generally, or a trust to accumulate rents and profits generally for the benefit of one or more infants which renders the estate inalienable. (1 R. S. 729, § 55.)

*It seems*, also, that if the trust did continue during the life of C., there was no unlawful suspension of the power of alienation.

*It seems*, also, that had there been a contingent remainder over, limited on the fee, to take effect in case of the first devisee dying before twenty-one, this would not have prevented the vesting of the estate in the first devisee, but would merely have rendered it defeasible by condition subsequent ; and while it would suspend the absolute power of alienation during the minority of the first remainderman, as such suspension is authorized by statute (1 R. S. 723, § 16), the devise would have been valid.

(Argued April 23, 1884; decided October 7, 1884.)

APPEALS from certain portions of a judgment of the General Term of the Supreme Court, in the first judicial department, entered upon an order made July 11, 1883, which modified a decree of the surrogate of the county of New York, rendered upon probate of the will of Michael Kuhn, deceased, so far as the same gave a judicial construction to said will. (Reported below, 28 Hun, 573.)

The following is a copy of the provision of the will in question:

"*Second.* I give, devise and bequeath unto my executors hereinafter named, the houses and premises known as numbers 472 Eighth avenue, and 496 Ninth avenue, in said city, together with all other property — real and personal — not hereinbefore devised, in trust, however, to and for the following purposes, to-wit: to take charge of the said real estate, and to collect and receive all income therefrom and to pay all taxes, assessments, and interest moneys thereon, and out of said income from the house No. 472 Eighth avenue, to pay each of my grand-children, William and Thomas Radley, the sum of $700, said sum to be paid each of them, without interest, at their respective arrival at the age of twenty-one years, and in case either shall die before such age, the survivor to have the whole sum of $1,400, and in case they both should die before that age, my executors have no part of said sum to pay to any one whomsoever, and said payments so to be made are to be made, are to be free of their parents' control; the trust hereby created is to continue until my son, Charles Henry, arrives at the age of twenty-five years, unless the said Charles Henry sooner dies. If he lives to be of such age, he is to have the rents and income, and benefit of the said real estate, No. 472 Eighth avenue only (after the aforesaid payments therefrom are made) during his life-time, and if he should die, leaving any lawful children, the said real estate on Eighth avenue is to become theirs in fee, when they arrive at the age of twenty-one years, and the same is devised accordingly. And my two daughters, Matilda Kuhn and Margaret Schonenberger, are to have all the income and benefit from the real estate No. 496 Ninth avenue, each to share and share alike (after all interest, moneys, taxes and assessments thereon are paid when due), during their life-time, and at their death, if they leave any lawful children, the said real estate on the Ninth avenue only is to become theirs, in fee, and the same is devised accordingly."

The testator died in 1878, leaving him surviving the three children and the two grand-children mentioned in the will; his

son Charles was then eighteen years of age, the oldest grand-child about fourteen.

*Edward C. James* for executors, etc., appellants.  The absolute power of alienation can only be suspended by a contingent limitation, or an express trust of such a character that the land cannot be alienated during its continuance.  (*Everett* v. *Everett*, 29 N. Y. 39 ; *Manice* v. *Manice*, 43 id. 303, 380 ; *Woodgate* v. *Fleet*, 64 id. 566, 574–5 ; *Smith* v. *Edwards*, 88 id. 92, 102.)  Under the statute against accumulations, they must be solely for the benefit of minors.  (1 R. S. 726, §§ 37, 38 ; *Pray* v. *Hegeman*, 92 N. Y. 508 ; 72 id. 376.)  The avoidance of the direction of the trust to accumulate the income would leave the other parts in full force.  (92 N. Y. 508, 519 ; *Williams* v. *Williams*, 8 id. 538.)

*George S. Hamlin* for Charles Henry Kuhn, appellant.  The court, in construing a trust, will adopt that construction which will sustain rather than defeat it.  (*Downing* v. *Marshall*, 23 N. Y. 366 ; *Post* v. *Hover*, 33 id. 593 ; *Harrison* v. *Harrison*, 36 id. 547.)  The contingent remainder in the Eighth avenue property to the children of Charles Henry Kuhn does not unlawfully suspend the power of alienation.  (*Manice* v. *Manice*, 43 N. Y. 374, 375, 380 ; *Roome* v. *Phillips*, 24 id. 463 ; *Everett* v. *Everett*, 29 id. 76, 82, 97 ; 1 R. S. 723, § 16.)  It does not affect the validity of a trust that during the authorized period of suspension of alienation several persons are to enjoy the benefit of the income, or that the use is to shift to different persons.  (*Gilman* v. *Reddington*, 24 N. Y. 14 ; *Manice* v. *Manice*, 43 id. 386 ; *Woodgate* v. *Fleet*, 64 id. 571 ; *Phelps, Ex'r*, v. *Pond*, 23 id. 81–82.)  If there is an implied direction for accumulation it is not void, but only invalid so far as its duration exceeds the time allowed by the statute.  (1 R. S. 728, § 55, subd. 4 ; id. 726, §§ 37, 38 ; 43 N. Y. 316–317, 379–381.)  The general intent of a testator or grantor may be sustained by cutting off a void trust, which is separable from other valid trusts and dispositions, and not an essential part of

the general scheme. (*Woodgate* v. *Fleet*, 64 N. Y. 573; *Harrison* v. *Harrison*, 36 id. 543; *Manice* v. *Manice*, 43 id. 384.) If the trust as to the Eighth avenue property is held invalid, that as to the Ninth avenue property must also fail. (*Harris* v. *Clark*, 7 N. Y. 242; *Knox* v. *Jones*, 47 id. 398; *Levy* v. *Levy*, 33 id. 137; *Manice* v. *Manice*, 43 id. 303, 384.)

*Nelson J. Waterbury* for respondents. The provision of the will in relation to the Eighth avenue property suspends absolutely the power of alienation for more than two lives in being at the creation of the estate, and is void. (1 R. S. [2d ed.] 718; 3 R. S. [7th ed.] 2176, §§ 14, 15, 16; *Hawley* v. *James*, 16 Wend. 62, 120, 123; *Manice* v. *Manice*, 43 N. Y. 303, 375.) Although a will may be good in part, and bad in part, the part which may be good cannot be carried into effect if it works such a distribution of the estate, as, from the whole will taken together, it is apparent it never was the intent or design of the testator that it should effect. (*Coster* v. *Lorillard*, 14 Wend. 265, 349, 368, 388; *Root* v. *Stuyvesant*, 18 id. 257, 316; *Darling* v. *Rogers*, 22 id. 483, 495; *McSorley* v. *Wilson*, 4 Sandf. Ch. 515, 525; *Harris* v. *Clark*, 3 Seld. 242, 251; *Salmon* v. *Stuyvesant*, 16 Wend. 320, 333; *Knox* v. *Jones*, 47 N. Y. 389, 398, 399.)

RAPALLO, J. The general design of the testator appears to have been, to give to each of his grand-children, W. P. and Thos. J. Radley, the sum of $700, payable at his majority; and to provide for the payment of those legacies out of the rents of the premises, No. 472 Eighth avenue; subject to those payments to give the income of the property to his son Charles Henry Kuhn during his life, and the remainder in fee to the children of Charles Henry on their coming of age; and to give or secure the income of the premises 496 Ninth avenue to the testator's daughters, Matilda and Margaret, during their lives, with remainder in fee to their children respectively. This general purpose seems to be free from any legal objection, and does not disclose any desire or intent to unduly suspend the

power of alienation of the property. But it is contended that the testator has, in the means adopted by him for carrying his purposes into effect, infringed upon the statute against perpetuities.

He undertook to carry out his scheme by creating a trust in his executors, and this trust is claimed to have the effect of suspending the power of alienation of the Eighth avenue property during the lives of the Radley children, of the testator's son Charles Henry, and of such of the children of Charles Henry as may die before either of them attains his majority. The trust as to the Radley children is, to take charge of the real estate in question, to collect and receive all income therefrom, pay taxes, assessments and interest moneys thereon, and out of said income to pay to each of the two Radley children the sum of $700, without interest, on their respectively coming of age, and in case either should die before such age, the survivor to have the whole $1,400, and if both die under age, no part of it is to be paid to any one.

It is claimed, and was held by the Supreme Court, that this trust must necessarily continue until the $1,400 is realized for the Radley children, which event may not take place during the three lives mentioned, and that in the meantime, until the fund is raised, the estate is inalienable. This is an error. The trust to pay the $1,400 does not suspend the power of alienation for any period whatever. If it is a trust at all under the fifty-fifth section of the Statute of Uses and Trusts, and not a mere lien or charge enforceable through a power in trust, it must be regarded either as a trust to lease lands for the benefit of legatees, or for the purpose of satisfying a charge thereon, or a trust to receive the rents and profits of lands and to accumulate the same. In whichever light it is regarded it does not render the estate inalienable, for the interests of the *cestuis que trustent* are assignable, the trust being for the payment of a sum in gross (1 R. S. 730, § 63.) Only a trust to receive rents and profits of land and apply them to the use of a person generally, or a trust to accumulate rents and profits generally for the benefit of one or more minors, renders the estate inalienable.

Where the sole object of the trust is to pay a sum in gross, by collecting and accumulating rents, etc., to a specific amount, the *cestui que trust* may release or assign. If the sum required to make the payment is provided in any other way, the trustee is not guilty of any violation of the trust by uniting with the *cestui que trust* in a conveyance or release of the land. The purpose of the trust would then have been accomplished. There is no provision of the statute which prohibits such an alienation. The trust is a mere mode of securing the payment of the amount of the legacy, and not a provision for the maintenance of an infant, a married woman, or an improvident person, which is the class of trusts contemplated by subdivision 3 of section 55, and which were intended to be made inalienable. (See Reviser's Notes to § 55 and § 63.) But as to trusts of the description now under consideration, the express terms of the statute are that " no person beneficially interested in a trust for the receipt of the rents and profits of land can assign or in any manner dispose of such interest; but the rights and interests of every person for whose benefit a trust for the payment of a sum in gross is created, are assignable." (1 R. S. 730, § 63.)

No doubt can be entertained of the validity of the provision for the payment of the $1,400 to the Radley children, whether it be regarded as a trust, a charge, or a power in trust, and it is not material to consider which. If it is a trust to lease land to pay legacies, no objection can be suggested to it, and if it is a trust to accumulate, it is good for so long as the minority of the children, or either of them, continues. (1 R. S. 720, § 38.) Even if the direction could be construed to be for a longer term than the minority of the children, the excess only would be void. It cannot, however, be thus construed. The will expressly directs that the trust shall terminate when Charles Henry attains the age of twenty-five years or dies. He was but four years the senior of the eldest of the Radley children, and consequently the trust would terminate by its own limitation at about the time that child attained his majority, and long before the younger child should come of age. I think it

is the plain meaning of the will that when Charles Henry attains the age of twenty-five years, the trust shall cease and the trustees shall have no further control of or estate in the property in Eighth avenue, but Charles Henry, if living, shall take the rents, as tenant for life, charged with the payment of any amount still unpaid of the $1,400. Should any surplus arise during the seven years which the trust might, according to its terms, continue, such surplus, being undisposed of, would go to Charles Henry as the owner of the next eventual estate. The terms of the will are very explicit as to the termination of the trust. The words are, " the trust hereby created is to continue until my son Charles arrives at the age of twenty-five years, unless the said Charles Henry sooner dies. If he lives to be of such age, he is to have the rents and income and benefit of the said real estate No. 472 Eighth avenue only, (after the aforesaid payments therefrom are made) during his lifetime." No effect whatever would be given to this provision if it should be held that though Charles Henry attained the age of twenty-five years the trust should nevertheless continue after that time, in case any part of the $1,400 remained unprovided. The will meets that contingency by declaring that in that event Charles Henry shall take the rents and income subject to the completion of the payment of the $1,400. The will is imperfect in not declaring what the effect would be of the death of Charles Henry before attaining the age of twenty-five years, but as that case may not arise, it is not necessary to determine it now. It is sufficient to know that, if he lives to the age of twenty-five, he takes a life estate in the Eighth avenue property, subject to a charge upon the rents of any deficiency in the $1,400, and that the remainder in fee is devised to his children, if he have any, when they come of age.

It is argued that the only portion of the trust which is to cease on Charles Henry attaining the age of twenty-five years is the trust to receive the rents and profits for the purpose of raising the amount of the legacies to the Radley children, and that after they are paid the trustees are to continue to receive the rents and profits for the purpose of applying them to the use

of Charles Henry during his life. This argument cannot be reconciled with the terms of the will. There is no provision for the application of the rents and profits by the trustees to the use of Charles Henry, during any part of the trust term. The trust does not appear to have been created for his benefit. The provision is, that the trustees are to receive the rents and profits and after the payment of taxes, etc., to pay the two legacies of $700 each; that this trust shall continue until Charles Henry attains the age of twenty-five years, and that thereafter, if he lives, he is to have the rents, income and benefit of the real estate in Eighth avenue (after the aforesaid payments therefrom are made) during his life-time. The right of the Radley children to have the rents applied to the payment of their legacies, until the necessary amount is made up, is thus preserved, notwithstanding the termination of the trust by Charles Henry arriving at the age of twenty-five years. But if, as contended, the trustees are to continue to collect the rents and profits after Charles Henry attains the age of twenty-five years, they must necessarily continue to pay out of the same the amounts necessary to make up the legacies to the Radley children. The trust, therefore, would continue as before, until the payment of those legacies is completed, and no effect would be given to the provision that it shall cease when Charles Henry attains the prescribed age.

This, however, is a merely incidental question, not affecting the validity of the will, for even if the trust did continue during the life of Charles Henry, there would be no undue suspension of the power of alienation, there being no trust for the Radley children, or other trust, which operates as a suspension.

Inasmuch as there are but two modes in which the absolute power of alienation can be suspended, viz.: by an express trust or power in trust of such a character that the land cannot be alienated during its continuance, or by a contingent limitation, it only remains to be considered whether the limitation of the fee, after the death of Charles Henry, is such as to fall within the statutory prohibition.

The disposition of the fee is, that if Charles Henry " should

die leaving any lawful children, the said real estate on Eighth avenue is to become theirs in fee when they arrive at the age of twenty-one years, and the same is devised accordingly." No remainder is limited in case Charles Henry should have no children, or in case none of his children should attain the age of twenty-one years. It is contended that this limitation suspends the power of alienation after the death of Charles Henry, in case he should leave children, until it shall be ascertained whether any of them attains the age of twenty-one years.

This is an error. If Charles Henry should die without issue the fee would, on his death, vest in the heirs of the testator. If Charles Henry should have a child or children, it would vest absolutely in them and be alienable and descendible. It is well settled that where an estate in land is devised to an infant, " when he attains the age of twenty-one years," his attaining that age is not a condition precedent to the vesting of his estate, but a simple postponement of the period at which he shall take possession. He takes a vested fee. A contingent remainder over may, under section 16, be limited on such fee, to take effect in case of the first devisee dying before twenty-one. Such contingent remainder over operates to reduce the absolute fee of the devisee first named, to a determinable fee. But the condition on which the remainder over is to take effect is a condition subsequent. It does not prevent the vesting of the fee in the first devisee, but merely renders such fee defeasible by condition subsequent. (*Manice* v. *Manice*, 43 N. Y. 380 ; *Roome* v. *Phillips*, 24 id. 463.)

Such a contingent remainder over, by rendering the fee first limited defeasible, necessarily suspends the absolute power of alienation during the minority of the first remainderman. But such suspension is expressly permitted, as to real estate, by 1 Revised Statutes, 723, section 16, and is the only exception to the rule that the absolute power of alienation cannot be suspended longer than during two lives in being.

In such cases the suspension is not caused by the provision that the infant shall take, when he arrives at twenty-one ; for, as has been seen, his estate vests at once, and only his possession

is postponed. The suspension is caused wholly by the contingent limitation over in case he dies before twenty-one. When, therefore, as in the present case, there is no such contingent limitation over, the devisee or devisees to whom the land is given, "when they become of age," take an absolute and indefeasible fee, and, in case of their dying under age, the fee vests in their heirs and not in the heirs of the testator.

This point was settled in *Boraston's Case* (2 Co. R. 19), and has often since been adjudicated. In *Boraston's Case*, the testator devised land to his executors for a term of years, and until his son H. should attain the age of twenty-one years. The will then proceeded : "When the said H. shall come to his age of twenty-one years, then I will he shall enjoy said upper part to him and his heirs forever." No remainder over was limited in the event of H. dying before twenty-one. H. died at the age of nine years, and it was held that the executors took a term of years to continue until such time as H. would have arrived at the age of twenty-one years had he lived, and that H. took a vested remainder in fee, and that on his death the estate descended, subject to the term of years of the executors, to the heir at law of H. and not to the heirs of the testator. The same principle was recognized in *Manice* v. *Manice* (43 N. Y. 381–383), where both real and personal estate had been rendered inalienable by a trust during the lives of the testator's widow and daughter, with remainder to the children of the daughter when they should become of age, and a contingent remainder over if they should die under age. This contingent remainder was held good as to the real estate, under section 16, but it was further held that that section did not apply to personal estate, and the contingent remainder was consequently void as to that, but that the result of declaring the ultimate contingent remainder void was that the infant children of the daughter took an absolute title to that part of their sub-shares which consisted of personal property. This result was the same as if no such contingent remainder had been created, as in the case now before us.

No question is made as to the validity of the disposition of

the Ninth avenue property except as dependent on the validity of the devise of the Eighth avenue property.

Our conclusion is that the whole will should be sustained, and that so much of the judgment of the Supreme Court as adjudges that the provisions of the will of Michael Kuhn, deceased, relating to the house and premises No. 472 Eighth avenue, are contrary to law and void, and all directions in said judgment respecting that property, should be reversed, and that the rights and interests of the parties in said premises, 472 Eighth avenue, should be declared in accordance with this opinion; that the residue of the judgment of the Supreme Court should be affirmed, and that the costs of all the parties in this court should be paid out of the funds in the hands of the trustees.

All concur.

Judgment accordingly.