### (Surrogate's Court, New York County.   December 11, 1888.)

1. WILLS—CONSTRUCTION—TIME OF PAYMENT—MAJORITY OF YOUNGEST CHILD.
    A residuary devise, known as the "tenth clause of the will," directed an equal division of the fund among testator's wife (if unmarried) and his children by her, when his youngest child should attain its majority, and that each equal portion should be separately invested for each, and the income paid to him or her for life.   One child was born after the will was made, and in a codicil testator bequeathed a sum to his wife, to be paid when his "youngest child attained the age of 21."   *Held*, that the expression "youngest child" meant the youngest child living at testator's death, and not the youngest at the date of the will.

2. SAME—DESCRIPTION OF LEGATEES—ISSUE OF DECEASED LEGATEES.
    Under a provision of said clause to the effect that at the death of testator's wife, or of any of his children by her, the "principal sum" before mentioned should be equally divided among the survivors, but if any child should die, leaving issue, such issue should receive such portion of the residuary estate as their parent would have received if living," the issue takes the portion of the estate in the income of which their parent was beneficially interested, and also such part as the parent would take in the interest of the widow and the other children dying without issue, if he survived them.

3. SAME—RESTRAINT OF ALIENATION.
    Neither of such provisions violate 3 Rev. St. N. Y. 2256, § 1, which limits the time of non-alienation of personalty to two lives in being at testator's death.

4. SAME.
    Testator, by the seventh clause of his will, directed a legacy to be paid to his son, on certain conditions, at his majority.   Another son being born, by a codicil he gave him a like legacy, both being payable out of the capital of the estate.   The codicil changed the time of payment "to make the date correspond with the time at which the residuary estate could be divided," which was at the majority of the youngest child.   At the death of either legatee without issue the share was to become part of the residuary estate.   By the tenth clause, a provision had been made for the division of the residuum of the estate between the widow and children at the majority of the youngest child, with the limitation of the share of any that should die to the survivors.   *Held*, that as to the youngest son the seventh clause was not illegal, as in no event could the limitation as to his interest continue longer than two lives in being at testator's death.

5. SAME.
    A devise to testator's wife of a part of the net income of his estate while she remains his widow, and until his youngest child attains his majority, is likewise valid, as in no event can it continue beyond the majority of the youngest child.

6. SAME—WHEN STATUTORY PERIOD IS EXCEEDED.
    As to the elder son, the clause would be void in respect to that part of his legacy incorporated with the trust for a beneficiary other than the youngest child of the testator, because as to it alienation might be suspended for three lives, viz., those of the legatee, the other beneficiary, and the youngest child.

7. SAME—ACCUMULATIONS.
    A direction that testator's interest in a business concern be continued, and the profits paid to his executors until the majority of the youngest child, then to be divided between the wife and children, and providing that the "fee" of the business should pass to his residuary estate, violates 3 Rev. St. N. Y. p. 2256, §§ 3, 4, prohibiting accumulations unless for the benefit of one or more minors, and to terminate at the conclusion of the minority, and is therefore invalid as to the accumulation attempted, because not wholly for the benefit of minors, but the principal will nevertheless pass to the residuary estate.

Application by Philip J. Sands for the probate of the will of Mahlon Sands, deceased, who died May 8, 1888, leaving his widow, Mary M. Sands, and four children, to-wit, Mabel Sands, an adult daughter by a former marriage, and

Ethel, Mahlon Alan, and Morton Harcourt Sands, infants, the issue of his last marriage. The will named as executors the widow, testator's brother, Philip J. Sands, and L. P. Morton. 3 Rev. St. N. Y. p. 2256, § 1 provides: "The absolute ownership of personal property shall not be suspended by any limitation or condition whatever," if by will, "for more than two lives in being at the death of testator." Sections 3 and 4 provide that the accumulation of the interest of money or other income from personalty may be directed to be made for the benefit of one or more minors then in being at testator's death, and to terminate with their minority, if commenced at or before the death of the person providing therefor, and, if commenced subsequently, it must be within two lives in being at testator's death, and expire with the minority of the persons for whose benefit it was made; and any other provisions for such accumulation shall be void, except that where it is directed to be for a longer term than the minority it shall be void only as to the time beyond the minority.

*Frederic De. P. Foster,* for proponent. *Robinson, Scribner & Bright,* for Mary M. Sands. *Booraem & Hamilton,* for guardian of Ethel Sands. *Charles S. Simpkins,* for guardian of Mahlon Alan Sands and Morton Harcourt Sands.

RANSOM, S. The formal requisites provided by the statute for the execution of a will have in this case been complied with by the testator. It is undisputed, and has been proven, that he possessed at the time of the execution of his will testamentary capacity. The validity, however, of the disposition of his personal estate, attempted to be made by the will, is questioned; and it is claimed that these dispositions, or the most important of them, are of such a character as to require that they should be declared void and inoperative. The tenth clause, which is the main object of attack, directs, substantially, that the residuary estate shall, when his youngest child attains majority, be equally divided between his wife, if she remain his widow, and his children by her; and that one of such equal portions resulting from such division shall be invested as a separate fund for the benefit of each of said persons, and the income thereof be paid over to the one for whom such portion had been set apart, "as long as they may live." The clause further provides: "At the death of my wife, or of any one of my children by her, the principal sums hereinabove provided for shall be divided equally between the survivors; but should any child die, leaving issue, such issue are to receive in equal shares such portion of my residuary estate as their parent would have received if living." The testator at the time of his death left four children, who still survive. One of them is a child by a former marriage, and is an adult; the other three are minors, and are children by his second wife. She is now living. The point is made, with regard to the direction for the division of the residuary estate, that it was designed to so operate that in case any two of the minor children should die before attaining majority the division should be deferred until the third child who happened to survive them should reach majority, and that in the mean time the executors were, by the provisions of the will, required to hold and administer the estate upon trusts which, if such provisions are valid, would render it, during their continuance, inalienable. The effect of this would be a suspension of the power of alienation for more than two lives in being at the death of the testator, and the consequent invalidity of the provision under consideration. Part 2, c. 4, tit. 4, § 1, 3 Rev. St. (7th Ed.) p. 2256; *Manice* v. *Manice,* 43 N. Y. 303.

I have no doubt whatever that it was the intention of the testator to invest his executors with the actual control and active management of his personal estate, save such part as he had specifically bequeathed, with the collection and investment of the income, and of its disposition in the way indicated by the will, and to constitute them for the purpose trustees of a trust to continue until the time which he had appointed for the division of the residuary estate should arrive. The provisions of the fourth, eighth, ninth, tenth, and

twelfth clauses recognize this, although the will does not expressly so provide. *Ward* v. *Ward*, 105 N. Y. 68, 11 N. E. Rep. 373; *Robert* v. *Corning*, 89 N. Y. 225. The contention that the youngest child mentioned in the clause in question refers to such one of the testator's minor children as shall live to first reach majority, and not solely to the youngest child living at the time of his death, is untenable. The child meant is undoubtedly the latter. The construction which adjudged cases have put upon provisions of similar character leaves no room for any other conclusion. They hold, besides, that the effect of such a provision is simply to prevent a division of the estate until the child shall attain the age of 21 years, or previously depart this life. *Muller* v. *Struppman*, 6 Abb. N. C. 350; *Lang* v. *Ropke*, 5 Sandf. 369; *Burke* v. *Valentine*, 52 Barb. 426; *Gilman* v. *Reddington*, 24 N. Y. 9; *Van Cott* v. *Prentice*, 104 N. Y. 56, 57, 10 N. E. Rep. 257. Any uncertainty that may be supposed to exist as to whether the child intended was the youngest living at the time of the execution of the will, or the child who was afterwards born, but was the youngest living at the time of the death of the testator, is at once removed upon reading the third clause of the codicil in connection with the clause of the will now being considered. They unmistakably show that the testator had in mind the youngest child living at his death. The time for the division of the residuary estate being postponed for the minority of a single child, or until such child should depart this life before reaching majority, the power of alienation could, of course, be suspended for but a single life. The direction for the division into separate trusts for the lives of the respective beneficiaries constituted as to each share a distinct and separate trust for the life of the person entitled to its income. The dispositions thus far attempted to be made of these shares, or of the residuary estate from which they were to be carved, considered apart from the provision for their ulterior limitation, are not open to the objection that they unlawfully suspend the power of alienation, as under them in no event could any share be held longer than for the life of the youngest child and the life of the particular beneficiary for whom such share was required to be put in trust. *Manice* v. *Manice, supra; Wells* v. *Wells*, 88 N. Y. 329, 330, 332, 333; *Monarque* v. *Monarque*, 80 N. Y. 320. The first part of the provision for the ulterior disposition of the residuary estate requires that at the death of the testator's wife, or of any of her children by him, the principal sums hereinabove provided for shall be divided equally between the survivors. The matter here mentioned is not expressly referred to any particular period, nor are any terms of contingency, such as "in case of," or "in the event of," used in connection with it, so as to allow the inference that it was intended to be confined in its application to death happening before the youngest child should attain majority. It, in my judgment, refers to the death of any of the persons specified, whether occurring before or after the happening of the event mentioned. The survivors of such persons, who should be living at the time of the death of any of them, would then become entitled to a vested interest in the property given by this provision. In the event of such death occurring before the youngest child should reach majority, the right of enjoyment of the person or persons taking would be postponed until the time for the division of the residuary estate should arrive, viz., death or majority of the youngest child. Should the death referred to happen after the youngest child had attained majority, the right of possession and enjoyment of the survivor or survivors of such deceased person or persons would be immediate. The right of the survivors to take all in case of the death of a child is, in my judgment, made dependent by the subsequent portion of the provision upon the contingency of the child dying without leaving issue. The interest bequeathed to the survivors is "the principal sums" therein provided for. By these sums is evidently meant the principal of the several funds embraced in the trusts constituted by the primary bequests. Literally construed, the direction for division between the survivors of his wife and her children

by him would seem to contemplate a disposition, upon the death of any of them,. of not merely the part of the residuary estate held or intended to be held in trust for the one dying, but of the rest of the residuary estate as well. The fact that the testator, by the primary bequest of such estate, expressly pro-. vides for the constitution of trusts to endure for the lives of the respective *cestui que trust* plainly evidences that the design attributed to him by the construction suggested was never entertained, but that his purpose was to provide for the distribution of the share affected by the trust constituted, or intended to be constituted, for the person dying. In other words, the testator meant that the share intended to be held in trust for a beneficiary should go, upon the death of the beneficiary, to the survivors. In case of a beneficiary who is a child there is the proviso that the child should have left no issue. This bequest to the children who might survive the wife, of the fund, the income of which was left to her, as well as the gift to the survivors of the wife and children of the share of such of the children as should die without leaving issue, is, in the view I take of the matter, so disconnected from the disposition which immediately follows, as to render their invalidity unaffected by any taint of illegality that may attach to the latter. I regard them as entirely independent provisions, and the disposition over upon the death of a child without leaving issue as a strictly alternative bequest. *Schettler* v. *Smith*, 41 N. Y. 328; *Manice* v. *Manice, supra.*

The meaning of the provision which immediately follows the one just considered is more difficult of solution. It declares: "But should any child die leaving issue, such issue are to receive in equal shares such portion of the patent medicines above referred to, and of my residuary estate, as their parent would have received if living." The portion of the estate here intended obviously refers to a part of the principal sums previously mentioned, and whose meaning I have already explained. Such sums represent the shares resulting from the division of the residuary estate, of which the interest of the testator in the patent medicine business is, by the eighth clause of the will, in effect,. made a part. This provision is susceptible of several interpretations. By one it might be construed as making provision for the distribution among the issue of a deceased child of the portion such child would have succeeded to had he survived to do so in the share held in trust for the wife or a child who had died. This would involve the notion that the share of each beneficiary of a trust would, upon the death of such beneficiary, go, in the case of a child,. not to his issue, but to the surviving children and the issue of any child who then happened to be dead. Under this interpretation, in case of the death of a child leaving issue, the issue would be entirely excluded from participation in the share set apart for the parent, which would be distributed among the widow and surviving children of decedent; and while the issue of the child first dying might eventually become entitled, upon the death of the other children, to a part of each of their shares, the issue of the child last dying. would be debarred entirely from any share in the funds in which their parent. or the other children were interested. In the distribution required by this view, the issue of the second child dying could only become entitled to share in the principal of the trust appropriated for the last. In view of the strange results flowing from this construction, it would be scarcely possible to suppose that it represents the intention of the testator; while the language employed, closely scanned, may give some color of plausibility to the interpretation which I have declined to adopt. The construction which would permit the surviving children of decedent to take the share of a deceased child only in the absence of issue of such child, would seem to reflect the intention of the testator, and I have previously indicated that I think it does. It is manifest from the language of this provision that the testator intended that the issue of a deceased child should take some portion of the residuary estate, including the interest in the patent medicines; but the precise share or portion

is in some degree rendered uncertain by the language he has used to identify or describe it. I am satisfied that the "portion" which it was intended that the issue should take was that in which their parent was given a beneficial life interest, together with such part as he would be entitled to take in the share of the widow and in the shares of the other children dying without issue, in the event that he survived them. The language by which the testator made the gift should, for the purpose of effectuating his intent, be so construed as to read as if the bequest was of the portion of the residuary estate whose principal or income the parent would have taken if, or while, living. *Wells* v. *Wells*, 88 N. Y. 330. This construction of the bequest is justified from what I deduce to be the intention of the testator from the general scope and purpose of his will, as well as from the plain import of the bequest itself and the authority of decided cases. *Du Bois* v. *Ray*, 35 N. Y. 172, 175; *Wager* v. *Wager*, 96 N. Y. 172, 174. Either of the interpretations just considered relieves the dispositions affected by it from any objection of unlawfully suspending the power of alienation.

A third interpretation is suggested. This would restrict the right of the survivors of the wife and children and the issue of the latter to take only in case of the death of the wife or of a child who had survived the majority of the youngest child. This would not, in the view I have taken of the meaning of the language employed, involve any question as to the unlawful suspension of the power of alienation. It would, however, in the event of any or all of the beneficiaries dying previously to the period stated, work an intestacy as to a part or all of the estate, as the case might be, and thus defeat the manifest intent of the testator to prevent an intestacy, and to make complete disposition of his entire residuary estate.

Still another construction, to the effect that the testator intended, in any event, that the trust created for the benefit of a child should be continued after his death for the benefit of his issue, or, in the absence of such, for the surviving children, and thus effect an unlawful suspension of the power of alienation of the fund, finds no support whatever in the language of the provision. I have thus arrived at the conclusion that the dispositions which the testator has made of his personal estate by the tenth clause of his will are valid. By such dispositions separate trusts were, upon his youngest child reaching majority, or, in case of his previously dying, at the time of his death, created for the benefit of his wife and her children by him for their respective lives, and upon their respective deaths, whether occurring before or after the death or majority of the youngest child, the funds belonging to the respective trusts would go to the issue of the respective beneficiaries absolutely. In case there should be no surviving issue of any beneficiary, then the share in which such beneficiary was interested would be divided among the surviving beneficiaries. The share of the wife, upon her death, would be distributable among such of the children as should survive her, and the issue then surviving of any of them who should be dead. In case of the death of a beneficiary before the arrival of the time designated for setting up the trusts, those who would take the principal of the share would become entitled to a vested interest in the same, with the right of possession or enjoyment postponed until death or majority of the youngest child. If the death of a beneficiary happened subsequently to the time just mentioned, his issue then living would take a vested interest, with an immediate right of enjoyment in the principal of the trust for the benefit of such beneficiary.

There can be no question that the bequest to the widow in the fourth clause is valid. She is given two-thirds of the net income of the estate as long as she remains testator's widow; but in no event is this bequest to extend beyond the time when the youngest child shall attain majority, or previously die. After this time, provision is made for her in the tenth clause, in case she remains unmarried. Should she remarry, she would cease to enjoy the

income given by the fourth clause. By the eleventh clause it is directed that such income is thereafter to go to the residuary estate, to be held until testator's youngest child shall reach majority. The effect of this attempted disposition of the income will be afterwards considered. The interest in the residuary estate, which the widow is, by the tenth clause, entitled to take, is made dependent on her remaining testator's widow. Although the language used here, when taken literally, would seem to preclude the widow only in the event of her having ceased to be such at or previously to the time of the division of the estate, from taking any share in the property divided, yet its obvious sense and purpose is, upon her remarrying, without reference to when it may occur, to deprive her of any share in testator's residuary estate. Clauses 4, 8, and 11 leave no doubt of the correctness of this view. No disposition is made of this share in the contingency stated. The bequest to the widow and children provides for the division between them equally, and for the retention in trust for each of them, of a distinct and separate fund or share. The fund so intended to be held for the wife will, in the event of her remarriage, be disposed of as in case of intestacy, and not go to augment the shares to be held for the children. The direction is for a division between the wife and children equally. This, if the provision stopped here, would make them tenants in common, and the result as to the direction in which this share would go would undoubtedly be as indicated. *Stevenson* v. *Lesley*, 70 N. Y. 515, 516; *Everitt* v. *Everitt*, 29 N. Y. 72. The separation, however, which is to follow the division of the respective shares into distinct and independent trusts, and their ultimate disposition, affords additional and convincing proof that the effect must be as stated. The circumstance that the bequest is part of the residuary estate does not alter the result. *Kerr* v. *Dougherty*, 79 N. Y. 346-349; *Beekman* v. *Bonsor*, 23 N. Y. 312.

The direction contained in the eighth clause for the continuance of the interest of the testator in the business therein mentioned, and the reception of the profits thereof until the youngest child should reach majority, and then their division between his wife and her children by him, is, so far as it makes provision for their retention for the purpose of division until the event specified, invalid. Such provision plainly contemplates an accumulation of profits in the mean time, which are not expressed or intended to be for the benefit of minors solely. To the extent that it provides for such accumulation the provision is therefore void. Part 2, c. 4, tit. 4, §§ 2, 3, 3 Rev. St. (7th Ed.) p. 2257; *Boynton* v. *Hoyt*, 1 Denio, 53; *Lang* v. *Ropke*, 5 Sandf. 365, 371; *Pray* v. *Hegeman*, 92 N. Y. 517-519; *Kilpatrick* v. *Johnson*, 15 N. Y. 326. The invalidity of this direction for accumulation, while obviating the necessity for any consideration of the subject of the seeming incompatibility between the dispositions contained in the eighth and eleventh clauses of the will with respect to the accumulations in the event that the widow should remarry, does not affect the validity of the provision for the ultimate incorporation in the residuary estate of the principal of the fund. The provision requires that its disposition shall be the same as is provided with reference to the residuary estate. The word "fee," which has been employed to define the character of the interest given, while a very inapt term to use in the connection in which it has been employed, leaves no doubt that the intention was to the effect stated. The cases which follow and are cited with respect to the question of the disposition of the intermediate profits are authorities for the conclusion that the disposition of the *corpus* of the fund is valid despite the nullity of the directions for accumulation. The statute (part 2, c. 1, tit. 2, art. 1, § 40, 3 Rev. St. (7th Ed.) p. 2179) provides: "When, in consequence of a valid limitation of an expectant estate, there shall be a suspense of the power of alienation, or of the ownership, during the continuance of which the rents and profits shall be undisposed of and no valid direction for their accumulation is given, such rents and profits shall belong to the persons pre-

sumptively entitled to the next eventual estate." This section, although a part of an article of the Revised Statutes relating to real estate, has been held alike applicable to personal property. *Gilman* v. *Reddington*, 24 N. Y. 19, and cases cited next below. In the present case the parties presumptively entitled to the next eventual estate or interest in the fund in question are those for whose benefit the trusts are provided to be set up out of the residuary estate—the widow of the testator and her children by him. *Manice* v. *Manice, supra; Pray* v. *Hegeman*, 92 N. Y. 508; *Barbour* v. *De Forest*, 95 N. Y. 13; *Schettler* v. *Smith*, 41 N. Y. 332–340.

The ninth clause of the will pertains, not merely to the manner of investment of the income, but also contemplates its accumulation. The intention of the testator, as to the character of the securities to be selected for investment, is perfectly plain, and no aid from the court is required to discover it. But, considering the provision in connection with the dispositions made in the tenth clause, and of those in the eighth, there can be no doubt that an accumulation was intended for disposition under the tenth clause. The same result in all respects follows as in the case of the accumulation provided for by the eighth clause.

The second clause of the codicil, taken in connection with the seventh clause of the will, makes provision for the payment out of the capital of the estate, under certain conditions, of a legacy of $30,000 to each of his sons upon their respectively reaching majority. The fifth clause of the codicil reads: "I hereby alter the ages at which my sons are to receive each a capital sum of $30,000 from the principal of my estate to twenty-one years, so as to make the date correspond with the time at which my residuary estate can be divided." There is, no doubt, some ambiguity and indefiniteness in this language; yet I think the testator's meaning is easily discovered. He intended to change the time which he had previously fixed for receiving the respective legacies to the time which he had designated for the division of his residuary estate, that is, when his youngest child should reach the age of 21 years. That this was his purpose is obvious from his language altering the time, viz: "So as to make the date correspond with the time at which my residuary estate can be divided." This accords fully with the scheme of the testator's will, and his palpable purpose to make the majority of his youngest child the event upon which the distribution of his residuary estate was to be dependent. The circumstance that this provision is contained in a clause which almost immediately follows a bequest of a like sum to the widow, to take effect when the youngest child should attain majority, affords strong evidence of the correctness of the conclusion reached with respect to the time when the legacies to the sons are payable. These bequests will therefore be payable out of the *corpus* of the estate, for the benefit of the respective legatees, when the youngest child of the testator shall attain majority in the manner provided, and subject, of course, to the restrictions imposed by the bequest. In case either of the legacies should be retained and invested for the life of the legatee who should have no child surviving, the legacy would, under the provision for its reversion to the estate, go into and become part of the residuary estate. In such event, in the case of the youngest son, who happens to be the youngest child of the testator, there can be no question as to the validity of this disposition. Respecting the bequest of the residuary estate, it has been stated that the interests which were given the legatees they take separately or as tenants in common, and not as joint tenants. Part of this legacy would then revert in equal shares to the trusts for the benefit of the other beneficiaries who should then be living, and be incorporated with the shares included in such trusts, and devolved with them. The balance of the legacy would pass in the same manner as the principal share of the legatee in the residuum in the event of his not leaving issue; that is, to the survivors. The disposition of this legacy would therefore in no event involve

an unlawful suspension of the power of alienation for more than two lives in being at the death of the testator. *Manice* v. *Manice, supra.* In the instance of the other son a different result would be produced as to such part of his legacy as would be incorporated with the trust for a beneficiary other than the youngest child of the testator. The power of alienation as to that might be suspended during three lives, to-wit, the life of the youngest child of testator, the life of the legatee himself, and that of any other beneficiary of a share in the trust in which it might be incorporated. As to such part the legacy is void, and would go as in case of intestacy. This result would not affect the validity of the interest of the legatee in the legacy, or the alternative disposition in favor of his children. *Schettler* v. *Smith, supra; Manice* v. *Manice, supra.* The condition to which the right of the legatees to take their legacies absolutely is made subject is such a restriction as a testator can lawfully impose. *Hull* v. *Hull,* 24 N. Y. 647; *Wells* v. *Wells,* 88 N. Y. 323. The bequest of $30,000 for the benefit of the widow, contained in the third clause of the codicil, is in like manner made payable out of the capital of the estate when the youngest son shall reach majority, in the event of her remaining testator's widow, and upon her death would, under the direction for its ultimate disposition, become part of the residuary estate. The same result as in the case of the second child follows here as to such part of the legacy as would, upon the death of the wife, go into and become a part of the trust fund held for the benefit of a child other than the youngest. It is void, and would go as in case of intestacy. Such part as might become a portion of the trust fund held for the benefit of the youngest child could, of course, be held for no more than two lives in being at the testator's death before it is required to be finally distributed, and is valid. The foregoing, I think, disposes of all the questions which have been presented for my determination.