CHARLES P. BOWDITCH, as TRUSTEE UNDER THE WILL OF ALLEN AYRAULT, DECEASED, RESPONDENT AND APPELLANT, *v.* WALTER AYRAULT, RESPONDENT AND APPELLANT, AND OTHERS, IMPLEADED WITH OTHERS, DEFENDANTS.

*Will — legacy of personal property — when it vests — estoppel — prior accountings of a trustee — not liable personally for past errors in distribution — correction thereof.*

A testator devised his residuary estate to a trustee with directions to convert it into money, and directed him, "as fast as practicable," to divide two-thirds of it between all the children of certain of the testator's brothers and sisters "who may be living at the time of my decease, and to the descendants of such of said children as may be deceased when said estate, or any part thereof, is distributed; said two-thirds of said residuary estate to be divided between all such children, and their descendants, equally, share and share alike; all the children of each deceased person to receive, collectively, the portion to which their parent would, if living at such distribution, be entitled under this provision." The amount of property which might fall into the residuum was, because of certain contingent bequests of annuities, unascertainable by the testator, and by the trustee when he qualified.

In an action brought to determine what was the proper construction of this clause:

*Held,* that, as all the property was directed to be converted into money, the rules relative to personal property must govern.

That a distribution was impossible until the annuities ceased.

That the remainder over did not vest in the testator's nephews and nieces, or their descendants, until the necessary moneys for distribution had been from time to time obtained.

That, in the event of the death of any one of the residuary legatees before distribution, the share vested in his or her descendants, and, failing these, in the other residuary legatees, but in no event in the personal representatives or assigns of the deceased legatee.

That where a trustee has had prior accountings with legatees, and they were conducted without objection upon their part, but upon an erroneous view of the law, the legatees are not estopped from claiming funds not distributed, and from which the errors made against them may be corrected.

That, in such case, the trustee is not personally liable because of such prior errors.

APPEAL by the plaintiff Charles P. Bowditch, as trustee under the will of Allen Ayrault, deceased, and by the defendants, Sarah Felt, Carrie C. Bosworth, Agnes L. Armentrout, and by the defendants, Allen E. Ayrault, Milton Ayrault, Lulu Bosworth, Morris Ayrault, George B. Smith and Mary I. Ayrault, by John Rorbach, their guardian *ad litem,* from so much of an interlocutory judgment

of the Supreme Court, entered, upon the report of a referee, in the office of the clerk of Livingston county on the 27th day of July, 1891, as adjudged that no estoppel is created, as to any of the defendants, by reason of either or any of the accountings which have been had by the plaintiff as trustee; also appeals by the defendants, Elizabeth F. Ayrault, individually and as administratrix of Walter Ayrault, deceased; Anna D. Colt, Edith Rose, Walter Ayrault, Ernest F. Ayrault, Guy Ayrault, Arthur D. Ayrault, Grace Ayrault, and by the defendant Florence Ayrault, by Ernest F. Ayrault, her guardian *ad litem*, from all of said interlocutory judgment, except so much thereof as adjudged that no estoppel was created, as to any of the defendants, by reason of any of said accountings.

*James C. Smith*, for the plaintiff. .

*James Wood*, for the defendant Florence Ayrault.

*John P. Bowman*, for the defendants Elizabeth F. Ayrault and others.

*John Rorbach*, for the defendants Sarah Felt and others.

MACOMBER, J. :

This action is brought to obtain a judicial construction of the twenty-fifth provision of the last will and testament of Allen Ayrault, so as to enable the trustee to make a final disposition of the trust estate now in his hands for distribution.

Allen Ayrault, the testator, died February 4, 1861, leaving a last will and testament, the twenty-fifth clause or item of which created certain trusts in the residuary portion of his estate, and directed a division of the funds after the termination of the trusts. There has been paid out since the probate of the will, which followed soon after the death of the testator, the sum of $153,990 under this the twenty-fifth item. There now remains in the hands of the trustee the further sum of $38,000 for final distribution. On proceedings upon the trustee's petition before the surrogate for a final settlement of his accounts, and for the discharge of the trustee under the will, a contest was made relating, not only to where the present fund

should go, but also touching the correctness and legality of past payments, and thereupon it was thought advisable to come into this court for a disposition of the question involved.

That portion of the twenty-fifth clause or item of the will material to this inquiry is as follows:

"I give, devise and bequeath the rest, residue and remainder of my estate, both personal and real, not hereinbefore disposed of, and such portions of the same as shall remain after the trusts herein provided for are fully discharged and fulfilled, and the legacies herein given are paid in full, to my said trustee, to be by himself disposed of as follows: I direct him to sell and convey all such estate, real and personal, and convert the same into money, or available means for such purpose, and dispose thereof as follows: I direct him as fast as practicable to divide two-thirds of said residuary estate between all the children of my brother John Ayrault, and my sister Mary Smith, widow of Sparrow Smith, and of my deceased brothers Nicholas Ayrault, Roswell Ayrault and Lyman Ayrault, and of my deceased sister Emily Griffith, who may be living at the time of my decease, and to the descendants of such of said children as may be deceased when said estate or any part thereof is distributed; said two-thirds of said residuary estate to be divided between all such children and their descendants equally, share and share alike; all the children of each deceased person to receive collectively the portion to which their parent would, if living at such distribution, be entitled under this provision."

The practical construction which, for thirty years, has been placed upon this provision of the will by the trustee, and approved by the Surrogate's Court in seventeen separate distributions of the funds arising from such trust, has been, that the remainder over did not vest in the testator's nephews and nieces, or their descendants, until the necessary moneys had been obtained, from time to time, for actual distribution among them; and that, in the event of the death of any of the residuary legatees before the time of the distribution, the legatee so dying had no vested interest in the residuary estate, but that the share which such legatee would have been entitled to if living, vested upon such distribution in his descendants, if any, or if none, then in the other residuary legatees, and, consequently, was

not payable, in any event, to the personal representatives or assigns of the deceased legatee.

The referee found, first, that none of the defendants were estopped in any manner by reason of the accountings which had been had by the plaintiff as trustee. To the second conclusion of law no exception has been taken by any of the parties to this action, and, consequently, no question on this appeal can arise thereon. The referee's third conclusion of law was, that so much of the residuary estate as was set apart by the other provisions of the will, upon the trust therein specified, and was not to become a part of the residuum for distribution until after such trusts were fully performed, or which was necessary to provide for the payment of the several legacies, annuities and life estates provided for by the will, did not vest in the residuary legatees until after such trusts were performed, and such life estates respectively were terminated, and said legacies and annuities were fully paid. The other conclusions of law stated by the learned referee were merely auxiliary to the foregoing principal findings.

The question, therefore, is whether, by the twenty-fifth provision of the will, the residuary estate vested in the legatees at once after the death of the testator, or at the time of actual distribution thereof among the residuary legatees. As bearing upon the construction of this portion of the will it may be needful to look into other portions thereof. Upon reference thereto it is found that the amount of the property which might ultimately come into the residuum was not ascertained nor ascertainable, either by the testator or by the executors and trustees, at the time of qualifying. In the fourth item the testator gave to his wife and to Nellie B. Bond, jointly, and to the survivors of them, certain specified personal property, with the proviso that such property should revert to and become a part of the residuary estate in case Miss Bond should survive Mrs. Ayrault, and die without issue. The fifth clause contained like provisions concerning devises to the same parties of certain real estate. The sixth clause gave the use of two farms to these persons, jointly, during their lives, and to the survivor during her separate life, the net proceeds of which were to be paid to them by the trustee who was authorized to sell the same in his discretion, after ten years from the testator's death, with the consent of the wife of the testator and of Miss Bond; and in case of

such sale invest one-half of such proceeds, the remaining one-half to become part of the residuary estate. These farms, or the proceeds of the sale of them, were, on the death of the survivor, to become a part of the residuary estate. By the seventh section the trustee was directed to set apart, out of the personal property, the sum of $50,000, and pay the interest thereof to the widow and Miss Bond, jointly, during their lives, and to the survivor during her life, and the other one-half thereof, upon the death of either of them, to become part of the residuary estate, and on the death of the survivor the whole thereof was to fall into the residuum. The fifteenth section of the will contains a direction to the trustee to invest the sum of $5,000, the interest thereof to be paid annually to two beneficiaries named, and to the survivor of them, and after the death of such survivor such sum to become part of the residuary estate. It is stated that one of these beneficiaries is still living, but it is understood by all parties that a sum in gross has been agreed upon to take the place of the annuity. The sixteenth section requires the trustee to invest the sum of $15,000, and to pay the interest on $12,000 thereof to a beneficiary named during his life, and on his death to pay the $12,000 to his children, the interest on the remaining $3,000 to be paid annually to the other beneficiary named during her life, and, on her death, this sum of $3,000 was to become a part of the residuary estate.

These provisions of the will, though not essential, it is believed, to a proper understanding and construction of the twenty-fifth section, reflect, nevertheless, some light upon the subject of the general testamentary scheme which was in the testator's mind.

In making a judicial construction of this will very little direct aid can be obtained from the adjudged cases, excepting those relating to the disposition of the personal property only. The question here presented relates solely to a testamentary disposition of personal property, and that, too, not through the medium of an equitable conversion of real estate into money; for there was an actual conversion thereof by the very terms of the will, as well as by the practical administration of the estate. There was no devise of real property in the residuary item of the will. If, therefore, this circumstance is favorable to one class of persons who are parties to this action, as against others, the advantage to them comes from the

difference in the nature of the tenure of personal property and of real estate, and which, though apparently slight, is often essential in ascertaining the true meaning of a will. This difference in the rule is recognized by the court in *Snell* v. *Tuttle* (44 Hun, 331). Perhaps as philosophical and lucid a statment of it as may be found is contained in the note to the case of *Delafield* v. *Shipman* (18 Abb. N. C., 297), to which our attention has been called by the learned counsel for the plaintiff. The doctrine is there adduced from the authorities, that, if the gift is of personal property, while it is true that the law, as a general rule, favors the vesting of it at the time of the testator's death, yet this tendency is restrained, in the absence of a different intent manifested in the will, by two rules which do not operate in the case of a devise of real estate, namely (1), that words of futurity, if annexed to the substance of a gift, will prevent vesting meanwhile; and (2), that unqualified words of survivorship are referred to the time of the future event, not to the testator's death. (See, also, analysis and review, in the same note, of the principal cases bearing upon the question.)

A brief reference to the adjudged cases which seem to bear closely upon the general principle involved, and which come as near as any to having a direct bearing upon this case, may now be made, so as to elucidate more clearly our rendering of this will.

In the case of *Teed* v. *Morton* (60 N. Y., 502), the testator devised certain real estate to his executors in trust to receive and apply the rents and profits to the use of his son during his life; then to sell and divide the proceeds among his son's living children, and the issue of those who had deceased. If the son should die without leaving issue, then it was directed that the executors divide the same among the testator's "surviving children, and the issue of such of them as may have died leaving issue." At the time of making the will, and of the testator's death, there were five children, and the issue of five deceased children, living. But the son, for whose benefit the trust had been created, died without issue. It was there held that the gift over was not to the children of the testator surviving him and to their issue exclusively; but that the issue of his deceased children also took, without distinction between those whose parents died before and those who died after the making of the will; and, further, that, as the gift was in money, the general rule of construction

applied, to wit, that words of survivorship in bequests are to be referred to the period of division and enjoyment, unless there is a special intent appearing in the will to the contrary; and that legacies to a class vest in those who answer the description and are capable of taking at the time of distribution. The doctrine was reaffirmed in the case of *Vincent* v. *Newhouse* (83 N. Y., 505). In the last-named case there had not been an actual conversion of the realty into personal property as in the case now before us. But it was held that there had been an equitable conversion thereof, and that the rules of the survivorship in bequests of personal estate control, and were referable only to the period of distribution and enjoyment, unless there was made to appear a special intent to the contrary. These two authorities are selected out of a great mass of cases bearing generally upon the subject for their special application to this case, and they are decisive.

Adopting the rules reaffirmed in the cases cited, the construction of the twenty-fifth section of the testator's will does not seem to be a complicated matter. That item or section contains a positive direction to the trustee to sell all of the estate, real and personal, and convert it into money, or available means, with the directions for the final disposition thereof as heretofore stated. It enjoins upon the trustee a division of two-thirds of such estate, "as fast as practicable," between all of the children of his brothers and his sisters "who may be living at the time of my decease, and to the descendants of such of said children which may be deceased when said estate, or any part thereof, is to be distributed; said two-thirds of said residuary estate to be divided between all such children and their descendants equally, share and share alike; all the children of each deceased person to receive collectively the portion to which their parent would, if living at such distribution, be entitled under this provision."

The will nowhere contains any bequest to the children of his brothers and sisters, other than is necessarily implied by the direction "to divide two-thirds of said residuary estate," etc. This clearly contemplates a selection of legatees from those nephews and nieces who should be living at the time that any division of the residuary estate might be made. The clause giving shares to the descendants of such nephews and nieces as had died, is indissolubly connected with the clause giving portions to the nephews and

nieces themselves, so far as relates to the time when the selection of the legatees is to be made; for the final clause of that sentence is, that all of the children of each deceased person shall receive collectively "the portion to which their parent would, at such distribution, be entitled under this provision." There appears, therefore, in the provisions of this will, a clear, well-expressed and consistent purpose of the testator, directing the distribution of the residuary estate among such of his nephews and nieces, or of their descendants, as should be living at the time when there could be an actual division thereof. There seems, besides, to be a clear purpose, although of a negative character, to prevent such property from going to the personal representatives of his nephews and nieces, where the same might be devoted to the payment of past debts, and not to the support and maintenance of the objects of his bounty. For these reasons, we think the conclusion of the learned referee upon the principal question was correct.

We have not overlooked the cases upon which the learned counsel for the defendants mainly rely, nor the arguments which have been so elaborately presented to the court in the briefs submitted. The case of *McKinstry* v. *Sanders* (2 T. & C., 181; affirmed, 58 N. Y., 662), on the opinion of the court at General Term, is stated by counsel to be so nearly like the case before us as to be a controlling authority. But in that case it will be found that while certain annuities were created out of the fund produced in part by the conversion of real estate, there was a provision that upon executing a bond for their payment by a religious body to whom the fund was bequeathed, the legatee, the religious body, should immediately take the whole of the fund. This fact disclosed an intention on the part of the testator that the religious corporation should have immediate title, followed by a full possession of the fund, upon giving the bond to pay the annuities. But this is the very exception to the rule which we deem applicable to this appeal, and is well recognized in the authorities which we have cited. In the case before us, however, the distribution is actually and necessarily postponed until the annuities cease. By no possibility could the children of the testator's brothers and sisters receive any part of the property until after the cessation of the life estates. Judge Miller in *McKinstry* v. *Sanders* (*supra*), says: The payment

of the legacies was postponed to enable the executor to dispose of the real estate and convert the whole of the estate into money, thus making the bequest independent of the time named, and vesting the legacies at the time of the testator's death. So, also, in *Goebel* v. *Wolf* (113 N. Y., 405), there was an express provision, other than that relating to the division of the residuary estate among the children, in the form of a positive direction to invest the same for the benefit of the children. In that case, the provision for the investment for the benefit of the children made a complete gift to them so that the interest of each vested immediately upon the death of the testator. These and the other cases cited, where it appears that the gift is immediate, but the payment or enjoyment thereof is postponed to a future day, do not, in our judgment, bear directly upon the will which we are called upon here to construe.

In respect to the appeal by the plaintiff, and by certain of the defendants, from that part of the interlocutory judgment which adjudges that the defendants are not estopped by the former accountings from raising the question here discussed, it is, as it seems to us, partly well taken and partly not. We are unable to find any proceedings upon the past accountings which would estop one class of defendants, as against the other, to set up the claim now made. To that extent, we think, the conclusion of the referee was correct. But, as between such defendants and the plaintiff, the same rule would not apply beyond the question of the distribution of the funds now remaining undisposed of. So far as the trustee has actually paid out moneys he has acted with a full knowledge of and without objection coming from these defendants. Still, if he has proceeded upon an erroneous basis, and yet has funds sufficient in his hands to equalize the payments among the distributees, we know of no reason why he should not be required so to distribute them, provided the court is wrong in its conclusions upon the main question. But he cannot, under these circumstances, be held personally liable for any loss. This question, however, is probably not of any practical importance if the construction of the will, as above given, is correct.

It follows, therefore, that the interlocutory judgment should be modified in respect to the provision therein touching the estoppel, and, as so modified, affirmed.

DWIGHT, P. J., and LEWIS, J., concurred.

Interlocutory judgment appealed from modified as indicated in opinion, and, as so modified, affirmed, with costs of this appeal to the several classes of parties who have filed briefs, payable out of the fund.