(86 App. Div. 405.)

### THORN v. DE BRETEUIL et al.

(Supreme Court, Appellate Division, Second Department.   July 24, 1903.)

1. WILLS—CONSTRUCTION—ACCUMULATIONS.
> Testator directed that after his death his business should be carried on by his executors during the lifetime of his wife and one of his daughters, and the survivor of them, and, after paying an annuity to his wife for life all profits and gains arising from his said business, after providing for the support of his children, should be added to and form a part of the working capital of his estate, until his children severally attained the age of 25 years, and that as each child attained such age the executors should pay to him or her the full proportionate sum per annum to which he or she might be entitled from the profits of the business, and that after the death of the wife and daughter the business should be closed, and the entire estate divided among testator's children and their descendants, per stirpes. *Held*, that in so far as the will directed the addition of surplus profits of the shares of the testator's children after they arrived at age, and before they attained the age of 25, to the estate, it created an accumulation not for the benefit of minor children, and was therefore void.

2. SAME—DIRECTION TO CONTINUE TESTATOR'S BUSINESS—TRUSTS.
> Where testator directed that his executors, their survivors or successors, should prosecute and carry on with his estate his personal business under the firm name, and accumulate the profits and dispose of them in a certain manner, such direction constituted a trust, and the acts of the executors in performance thereof were performed in their capacity as testamentary trustees, and not as executors.

3. SAME—RIGHTS OF BENEFICIARIES.
> Where a provision of a will directing testator's executors to carry on his business constituted the creation of a trust for that purpose, the beneficiaries thereof had no power to object to the continuance of the business and require an immediate division of the trust fund.

4. SAME—RES JUDICATA.
> Judgments in actions brought by executors to have their accounts adjudicated, in which certain provisions of the will were construed, but in none of which was the question as to whether one of the provisions of the will created an invalid accumulation raised, mooted, discussed, or determined, were not res judicata of such question.

5. SAME—LIMITATIONS—APPLICATION OF STATUTE.
> Where a will created testator's executors testamentary trustees for the purpose of carrying on testator's business and accumulating the income and profits thereof for a certain period, beneficiaries of the trust

were not barred by limitations from contending that, in so far as the
will attempted to create an accumulation of income after the beneficiaries
arrived at majority, it was void, so long as such testamentary trustees
still continued the management of the business, and held the proceeds
of the estate for distribution.

6. SAME.

Testator directed his executors to carry on his business, and, after
paying certain sums for the education and support of his wife and
children, directed an accumulation of the surplus. He then gave to
his wife all his household furniture, etc., together with his residence
and country place, in lieu of dower, and directed that on the death of his
wife and a certain daughter the business should be closed, and his
entire estate divided among his children and their descendants, per
stirpes. Held, that the proceeds of testator's residence and personal
property devised to his wife were not intended to be added to the work-
ing capital of testator's estate at her death, and that on the wife's
death testator's children were entitled to the proceeds of the sale of
such property.

7. SAME—PROVISIONS FOR CHILDREN.

Testator provided that from the surplus income of his estate his
executors should support, educate, and maintain his surviving children
until they arrived at the age of 25 years, up to which time the executors
should advance to such children such sums of money as would benefit
or promote their happiness or comfort; such advances to be charged
against them. Held, that only the amounts advanced for the comfort
and happiness should be charged as advancements against the share
of each, and that payments made for the support, education, and main-
tenance of all the children until they arrived at 25, respectively, should
be charged against the profits of the estate.

8. SAME—INVALID ACCUMULATION—RIGHTS OF BENEFICIARIES.

Where an accumulation of income until testator's children arrived at
the age of 25 years was valid to the time of the arrival of such children
at majority only, such children, after having arrived at age, were
entitled to a present distribution of the income subsequently accruing.

Appeal from Judgment on Report of Referee.

Action by William E. Thorn, as sole surviving executor and trustee
of the estate of William T. Garner, deceased, against Marcellite Thorn
Garner De Breteuil and others. From a judgment entered on the
final report of a referee, both parties appeal. Modified.

Argued before GOODRICH, P. J., and BARTLETT, JENKS,
and WOODWARD, JJ.

Nathaniel S. Smith, for plaintiff.

James Byrne (Lorenzo Semple, Augustine L. Humes, and H. F.
Wolff, on the brief), for defendants De Moltke-Huitfeldt and Gor-
don-Cumming.

F. R. Coudert, Jr., for defendant De Breteuil.

Peter B. Olney, guardian ad litem.

JENKS, J. This action for an accounting involves the construc-
tion of the will of William T. Garner. He left an estate largely in
cotton mills, printworks, and other assets of Garner & Co., the com-
mission house for the mills. Mr. Garner and his wife died together
in 1876, leaving surviving them three daughters as sole heirs and next
of kin—Marcellite, born in 1868, now La Marquise De Breteuil;
Florence, born in 1869, now Lady Gordon-Cumming; and Edith,

born in 1874, now Countess de Moltke-Huitfeldt. Each daughter has infant children. The will is as follows:

"I, William T. Garner, of New York City, do hereby make, publish and declare this as and for my last will and testament, hereby annulling and revoking all other and former wills by me at any time heretofore made.

"First. I direct the payment of all my just debts as soon as practicable after my decease.

"Second. I direct that my executors hereinafter named, or such of those named as shall qualify as such, their survivors or successors, shall prosecute and carry on with my estate and property, my present business under the firm name of Garner & Co., for and during the lifetime of my wife, Mary Marcellite, and my daughter Florence, and the survivors of them, and that all profits and gains arising from said business shall, after the sum set apart for the support of my wife and children, as hereinafter provided, are deducted, be added to and form a part of the working capital of my estate.

"Third. From out the income and profits of my said estate, my executors will pay my beloved wife, Mary Marcellite, during her life the sum of seventy thousand dollars, net, per annum, to be paid to her in equal monthly payments, upon her individual receipt, free from any abatement or reduction for any charge or tax whatever. I give to her also, and to her heirs forever, all my household furniture, beds, bedding, pictures, books, jewelry, horses, carriages, silverware and plate owned by me at my decease; also, the use and occupation, rent free, during her lifetime, of my residence in New York City, and my country place at Staten Island, the same to be kept in repair by my estate. These provisions for my wife shall be in lieu and bar of all claims for dower she may have in my estate.

"Fourth. From out of the surplus income of my estate my executors will support, educate and maintain my child or children surviving me, and such as may be born alive of my said wife within nine months after my decease, until they severally attain the age of twenty-five years. Up to such age such executors may advance to any child or children such moderate sum or sums of money as, in their best judgment, will benefit or promote the happiness or comfort of such child or children, such advances to be charged against them. As each child attains the age of twenty-five years, said executors shall pay over to such child or children the full proportionate sum per annum to which she or he may. be entitled from out of the profits of said business, after my wife's amount is paid her, with expenses thereof, and my executors will so apportion and divide such income and profits that my sons shall receive twice the sum per annum that my daughters receive.

"In case of the death of any child or children of mine, leaving lawful issue surviving, then the parent's share shall be paid to such issue, if of age, or used for their education, support and maintenance (or so much thereof as may be necessary) by my executors, until such issue attains full age of twenty-one years, when such income shall be paid them in full.

"Upon the death of my said wife and my daughter Florence, the said business shall be closed and my entire estate settled and divided among my children or their descendants, if any have died leaving children, per stirpes.

"In case of the death of all my children, leaving no lawful issue or descendants them surviving, upon the death of my said wife, and my business being closed, all of my estate of every kind, with all accumulations, profits and gains arising from business or otherwise, shall be divided equally among my sisters, Frances A. Lawrence, Anna J. Garner, and my niece, Fannie M. Garner (daughter of my deceased brother Thomas), share and share alike, or the descendants of such as may have died, per stirpes, not per capita, or if either have died leaving no issue or descendants, then such share shall be given to the survivor of those above named.

"Fifth. I appoint as the executors of this my will Samuel W. Johnson, John I. Lawrence, James F. Thorn and William E. Thorn, and authorize them, or the survivor, to sell and convey all or any part of my real estate left by me, as they may deem advisable, and to give good and valid deeds therefor, with full power to change securities and investments as they deem best.

"My said executors and my said wife shall be the guardians of the persons, and my said executors shall be the guardians of the estate of my children during their minority.

"In the prosecution of my said business as above directed the said executors shall not be liable personally for any losses or debts, except arising from bad faith or gross mismanagement.

"In witness whereof, I have herewith set my hand and seal this 5th day of April, one thousand eight hundred and seventy-one."

The executors have carried on the business. The children have been maintained, and since their twenty-fifth year, respectively, have received one-third of the profits. In every year since 1878 there was a large surplus of profits added to the capital until each daughter became 25 years old.

The plaintiff seeks an adjudication of his accounts, discharge, acceptance of his resignation, and the appointment of a certain corporation as his successor. The adult defendants ask for a construction of the will so that they may be declared severally entitled to receive amounts in addition to their other dues equal to the difference between one-third of all the income up to the time each attained the age of 25 years and the amount actually received by them. The record shows this stipulation:

"That in case the accounts must be restated in the manner claimed by the adult defendants, the sum of $3,830,978.16 is the balance of the net income of the estate of William T. Garner since his death, after deduction of $1,019,732.93 claimed by the trustees and guardian ad litem, and the amounts paid to the three adult defendants, other than for their support, education, and maintenance."

The Thelusson act (39 & 40 Geo. III, c. 98), which is the basis of our legislation upon accumulations, reads in part:

"Whereas it is expedient that all dispositions of real and personal estates, whereby the profits and produce thereof are directed to be accumulated, and the beneficial enjoyment thereof is postponed, should be made subject to the restrictions hereinafter contained: * * * that no person or persons shall, * * * by any deed or deeds, surrender or surrenders, will, codicil, or otherwise howsoever, settle or dispose of any real or personal property, so or in such manner that the rents, issues, profits, or produce thereof, shall be wholly or partially accumulated."

In Shotwell v. Mott, 2 Sandf. Ch. 50, 61, it is said that our statute rests on the Thelusson act, and the court quotes the revisers' note, that:

"The English act relates to personal as well as real estates, and the same mischiefs are to be apprehended in each case. The spirit of our institutions is hostile to such investments."

In Vail v. Vail, 4 Paige, 317, 332, the chancellor says:

"This law against accumulations is therefore a salutary provision in the Revised Statutes, as no man should be encouraged, or even permitted, to withhold the mere income of his estate from those who should be the first objects of his bounty, for the sole purpose of hoarding up wealth, by compound interest after his death, to provide for a second or third generation, of whom he can know nothing. Neither is it necessary that he should be permitted to accumulate a fortune, after his death, for his immediate descendants, to be given to them at the close of their lives, when they are no longer in a situation to enjoy it. It is the duty of the court, therefore, to carry this law into effect according to its spirit and intent, and in such

manner, if possible, as to correct those evils against which the revisers and
the Legislature intended to guard."

See, too, 4 Kent's Commentaries (14th Ed.) p. 286, and cases cited.
In the language of Andrews, J., in Pray v. Hegeman, 92 N. Y. 508,
515:

"The Legislature intended to uproot the doctrine that the rents and profits
of property might be accumulated and the enjoyment postponed, with a
single exception. This was accomplished by sections 37 and 38. The excep-
tion in section 37 must be construed in view of the general policy of the
Legislature, and the particular policy upon which the exception proceeded."

Parker, C. J., cites and adopts this language in Hascall v. King,
162 N. Y. 134 [56 N. E. 515, 76 Am. St. Rep. 302], saying that his
court "has ever been faithful in giving full force and effect to both
the letter and spirit of the statute," and that:

"The meaning which the word 'accumulation' has in course of time come
to have in our law is stated in the Century Dictionary as follows: 'The add-
ing of the interest or income of a fund to the principal, pursuant to the
provision of a will or deed preventing its being expended.' The law imposes
restrictions on the power of a testator or creator of a trust to prohibit thus
the present beneficial enjoyment of a fund in order to increase it for a future
generation."

It is said in Jarman on Wills (Bigelow) 6th Ed. p. *286, in criti-
cising Basil v. Lister, 9 Hare, 177, with reference to the Thelusson
act, "It can scarcely, therefore, be said that the act does not apply
because a particular mode of accumulation is resorted to," referring
to the expressions of Cranworth, L. C., in Tench v. Cheese, 6 De G.
M. & G. *453, 461:

"If a testator directs that to be done which, as a necessary consequence,
leads to an indefinite accumulation, he must, within the meaning of the
statute, be taken to have directed accumulation. That rests on a principle
of law which is applied to 'every case, and is pre-eminently applicable in
cases of construction of wills."

Cullen, J., speaking for this court in Matter of Rogers, 22 App.
Div. 428, 431, 48 N. Y. Supp. 175, 177, said:

"No principle of public policy declared by our statute law has been more
firmly and rigidly upheld by the courts than this inhibition against accumula-
tions. This accumulation must not only be for infants, but it must be
exclusively for infants—so much so that, if an adult or person not in being
is to share in the accumulation, then a trust for the accumulation is void.
Boynton v. Hoyt, 1 Denio, 53; Kilpatrick v. Johnson, 15 N. Y. 326."

The policy of our Legislature is plain. The principle forbids ac-
cumulations, and the prohibition of the statute is upon the result, not
upon any particular means of reaching it. Whether the profit or
produce be derived from land, a house, a bond, or a business, is not
material to the principle. It is the heaping up of the returns, rents,
interest, profits, that offends the law.

By the fourth clause of the will, the testator provides for the sup-
port, education, and maintenance of his children, but he does not di-
rect the payment of each one's share of the profits per annum of
the business until she has attained the age of 25 years. Whatever
annual sum represents the excess of profits over charges of the $70,-

000 payable to his wife, the sums expended for the maintenance of the children, and any advancements, are to be added to the fund—the working capital of the estate. As to some sums, then, there is an accumulation thereof directed, not during the minority of the children, but until they respectively arrive at the age of 25 years, and therefore by so much beyond their respective minorities. Or if those gains and profits are not to be distributed until the termination of the trust as provided for in the said clause (i. e., upon the death of the wife and the daughter Florence), then there is an accumulation of such gains and profits not directed for a minority. I think that in either event there is an accumulation not directed exclusively for the benefit of minors, and that such directions, so far as they do not contemplate accumulations exclusively for the benefit of infants during their minorities, cannot stand. Barbour v. De Forest, 95 N. Y. 13; Pray v. Hegeman, supra; Boynton v. Hoyt, supra; Kilpatrick v. Johnson, supra.

I now proceed to examine the grounds for the conclusion of the learned and able referee that the provisions of this will are not repugnant to the statutes. He writes that the question in this case is "whether a direction by a testator to an executor to carry on the testator's business, and to add a portion of the profits to the working capital for the purpose of maintaining and developing the business, is the creation of an estate out of which profits are to arise, within the meaning of the statute, and whether the profits of such business are rents and profits of real estate and income of personal property, within the meaning of the statute." I do not concede that this is an exact statement of the question. The scheme of the testator was not primarily to add a portion of the profits to the capital for the purpose of maintaining and developing the business. He directs the business to be carried on for the lifetime of his wife and of his daughter Florence, and of the survivor of them, and that all profits and gains after the sum set apart for the support of his wife and children is deducted be added to and form a part of the working capital. He then gives his wife $70,000 a year, and out of the surplus provides for the maintenance of his children until they are 25 years old, respectively. The terms used are "profits and gains" and "surplus income." The terms involve the idea of the deduction in the first instance of the expenses of the business. In People v. Supervisors of Niagara, 4 Hill, 20, Bronson, J., while stating that "income" and "profits" are sometimes synonymous, says further that "profits generally mean the gain which is made upon any business or investment when both receipts and payments are taken into the account." See, too, Matter of Jones, 103 N. Y. 621, 624, 9 N. E. 493, 57 Am. Rep. 775. But as soon as the children reached the fixed periods of 25 years, respectively, they are to receive their full proportionate sum per annum out of the profits. The gains and profits are not then to be devoted primarily to the purposes of maintaining and developing the business. They are first to sustain the wife and children—the wife in the stated sum, and the children in all necessary sums, with discretionary advancements—and the excess is to be added to the working capital of the estate. But as soon as the children reach 25 years of age, respective-

ly, all of the surplus income and profits are to be devoted to them. I infer that the retention of the excess in the meantime was based upon the scheme, not that the business should be maintained and developed therewith, but that not until they reached 25 years, respectively, would the children require, or should they be intrusted with, the whole of their income. · For the application to the working capital of the excess of profits is not to cease in any period of the business, or when any matter incident thereto has been accomplished, but at a fixed period in the life of each child. The paramount consideration, then, was the provision for his children, not the maintenance of the business. Of course, if the excess went to the working capital, it was a benefit thereto, but this does not warrant the statement that the purpose of the testator was to develop or to maintain the business, and there is not a word of the testator. which indicates that such was primarily his intent.

Returning to the question as stated by the learned referee, I note that the statute does not merely forbid the creation of an estate. Its specific words were, "And all directions for the accumulation of the rents and profits of real estate, except as herein allowed, shall be void" (Rev. St. [1st Ed.] pt. 2, c. 1, tit. 2, § 38); and the present statute reads, "All directions for the accumulation of rents of real property, except such as are allowed by statute, shall be void" (Heydecker's Gen. Laws, p. 3808, c. 46, § 51). As to personalty, the statute reads, "All directions for the accumulation of the interest, income and profits of personal property, other than such as are herein allowed, shall be void" (Rev. St. [1st Ed.] pt. 2, c. 4, tit. 4, § 4); and the present statute reads: "All other directions for the accumulation of personal property, not authorized by statute, are void" (Heydecker's Gen. Laws, p. 3901, c. 47, § 4). The learned counsel for the respondent, also arguing that there must be a creation of an estate, lays stress upon the fact that the provisions against accumulations are part of the law of the state regulating trust estates, and points out that the words "creation of an estate" are used twice in section 389 of the statute. I do not attach much force to this argument. It is entirely natural that provision against accumulation of the rents and profits of real estate should be found within the title "On the Nature and Qualities of Estates in Real Property and the Alienation Thereof," and within the chapter "On Creation and Division of Estates." It is to be noted that the words "creation of an estate" are used in connection with the accumulations that are to commence on the creation of the estate, out of which the rents and profits are to arise, and that there is nothing to indicate that, if the accumulations are not directed in ipsissimis verbis to be made in order to create an estate, they are without the ban of the statute. Any direction as to profits must be either for accumulation or for application. If it be for the former, then it is opposed to the spirit of the statute as much as if the testator had in express words directed that they should constitute an estate. It is the fact of the accumulation, not the form of it, that must control. It is not the nature of the property created by the accumulation, but the accumulation, that offends the statute.

I think that the direction that profits and gains arising from the said business be added to and form a part of the working capital of the estate is equivalent to a direction for the accumulation of the rents and profits, and of the interest, income, and profits of the real and personal estate of the testator. In the first place, the testator directs that the business shall be continued and carried on with his estate and property. So the profits and gains thereof are the continuous earnings of that business, or the continuous returns therefrom as a going concern. He used the terms interchangeably with "income and profits," inasmuch as he provided that the profits and gains shall, after the sum set apart for his wife and children is deducted, be added to and form part of his estate. I think that "profits and gains" is equipollent with "rents and profits." "Rent is a certain yearly profit in money, provisions, chattels, or labor, issuing out of lands and tenements in retribution for the use." Kent, Com. 461, citing authorities. "Rent is defined to be a certain profit issuing yearly out of lands, and is a return to the landlord for their annual use." Boyd v. McCombs, 4 Pa. 146. It is "a compensation for the premium of a corporeal inheritance, and a profit, either in money or some other thing, etc., issuing out of the land in return for its use." Bloodworth v. Stevens, 51 Miss. 475. "It must be a certain profit issuing out of lands and tenements corporeal." Van Wicklen v. Paulson, 14 Barb. 654, citing 2 Bl. Com. 20; Co. Lit. 19, 20. In Stephens v. Reynolds, 6 N. Y. 454, 458, the court say of rent: "And it is defined to be a yearly profit, issuing out of lands. It must be a profit, but it is not necessary that it should be in money." In Dolph v. White, 12 N. Y. 296, the court say: "Rent is defined to be a certain profit issuing yearly out of lands and tenements corporeal. Co. Lit. 141g; 2 Bl. Com. 41." In Otis v. Conway, 114 N. Y. 13, 20 N. E. 628, it is said: "Technically, rent is something which a tenant renders out of the profits of the land which he enjoys." "Gain" means "that which is acquired or comes as a benefit. Profit." Century Dictionary. In Last v. London Assurance Corporation, 10 App. Cas. 438, 450, Lord Fitzgerald says:

"We are bound to adopt the interpretation put on 'profits' in The Mersey Docks v. Lucas, that the expression means the incoming of the concern after deducting the expenses of earning them, or income, of whatever character it may be, over and above the costs and expenses of receipt and collection, and that the gains of trade are what is gained by the trading, for whatever purpose it is used."

This definition is by Selborne, L. C., in Mersey Docks v. Lucas, 8 App. Cas. 891, 905. This demonstrates that the terms "profits," "gains," "income and profits," and "income," all refer to the annual return from the continuous business of the testator which is to be carried on with his estate and property. There is no such technical or peculiar meaning to the phrase "rents and profits" as to deny a synonym in "gains and profits." A rent is a profit, and the profit in rents and profits is a profit still. Not only does the testator use the words "gains and profits," but also the word "income," to describe the same property. See, too, Remington v. Field, 16 R. I. 509,

510, 17 Atl. 551; Sim's Appeal, 44 Pa. 345, 347; Andrews v. Boyd, 5 Me. 199. The plaintiff himself, on the witness stand, says: "By 'income' I mean profits of the business. 'Profits'—yes—I suppose, is the better word. The profits become income." Thus Bouvier defines "rents, issues, and profits" as the profits arising from property generally. As to "income," Jessel, M. R., in Ex parte Huggins, L. R. 21 Ch. Div. 85, 92, said, "The word 'income' is as large a word as can be used." I think that the words "gains or profits" are also equipollent with the terms "interest, income, or profits of personal property." "Gains" certainly is sufficiently generic to refer to whatever is obtained from the use of that property. In People v. Supervisors of Niagara, supra, Bronson, J., says:

"It is undoubtedly true that 'profits' and 'income' are sometimes used as synonymous terms; but, strictly speaking, 'income' means that which comes in, or is received from any business or investment of capital, without reference to the outgoing expenditures, while 'profits' generally means the gain which is made upon any business or investment when both receipts and payments are taken into account."

Bouvier defines "income" as "the gain that proceeds from property, labor, or business." An act of Congress (Act March 2, 1867, 14 Stat. 478, c. 169, § 13) used the term "gains, profits and income of every person," and the United States Supreme Court held that the assessment thereby prescribed was to be made upon the annual products or income of one's property or labor, or such gains or profits as may be realized from a business transaction begun and completed during a year. Gray v. Darlington, 15 Wall. 63, 65, 21 L. Ed. 45. There is an accurate definition of "income" given by Learned, P. J., in People ex rel. Cornell v. Davenport, 30 Hun, 177, 186: "That which is earned, remaining itself intact." In fine, whatever this business continuously earned, as rent or profits or interest or income or profit, is contemplated and described by the words "gains and profits" and "income," used by the testator. For rent is a profit, and profit is a gain. Interest is a profit or income. Income is a gain or a profit, and profit is a gain. And generally whatever is received for the hire or for the use of property is a gain. In this case the estate was mainly cotton mills and printworks, and the other assets of a business. The business house of Garner & Co. was a commission house which acted for the mills. That business has been continued to the present day, and the real and personal estate has been employed therein. In Downing v. Marshall, 23 N. Y. 366, 80 Am. Dec. 290, the court say:

"I am clearly of opinion that a trust to receive the rents and profits of real estate, and apply them to the use of the beneficiaries named, was marked out in these provisions. The mills were to be carried on by the executors, to whom, as trustees, the legal estate was expressly devised. It is true that the annual income of the business would be a complex result flowing from the use of the water power, the machinery, and the mills; from the profit of capital and the employment of labor. The material consideration is that the use or profit of land would be one of the constituents in producing that result, and it might be the principal one. The executors were to have the possession of those establishments, and to operate them for the benefit of the institutions or societies which were the objects of the testator's benevo-

lence. In this manner the profit of land was to be received, and, in combination with other elements, it was to be paid over to the beneficiaries. In a trust to receive the rents and profits of real estate, it is not implied that the trustee must lease the estate, because that is not the only or the most usual mode of perception. As the owner of land may lease or occupy it, so, in creating a trust, he may provide for receiving the use or income in either of these modes."

A further reason which appears to have warranted the conclusion of the referee is that the profits of a business added to the capital, and thereby increasing the income of the life tenants, do not present an instance of what Mr. Justice Lopes, in Vine v. Raleigh, L. R. 1891, 2 Ch. 13, 24, calls a "dry, unproductive cumulus." In Vine v. Raleigh, supra, a trust was created, and authority given to expend the surplus income in the improvement of the estate, and in maintaining in good, habitable repair houses and tenements on the property; and the court allowed charges of sums expended from the surplus income for putting up buildings, setting out fruit trees, and buying the fixtures of a public house, saying that the will did not offend the Thelusson act. But the "dry, unproductive cumulus" theory, as applied to this case, presents this proposition: If annual profits of a fund be added annually to that fund, then there is no accumulation of such profits, provided a part of the profits of that fund, as thus constituted, be annually paid out to the beneficiary. But the answer is that the beneficiary is deprived of the annual profits rolled up in the fund, and is not compensated by merely a part of the income of the fund, even though the fund's earning power be thus increased. The excess is surplus profits—is income—and as such it belongs to the beneficiary. Investment for her by adding it to the fund, and thereby increasing its earning power, is not equivalent to a payment of such profits to the beneficiary. The beneficial enjoyment of such excess profits is thereby postponed, and, if postponed beyond minority, offends the statute. Vine v. Raleigh, supra, is akin to In re Nesmith, 140 N. Y. 609, 35 N. E. 942. The discrimination between this case and In re Nesmith, supra, is found in that there is a radical difference between an absolute direction after the payment of $70,000 annually to the widow and the sum necessary to the maintenance of the children, and advancements, to add all of the profits to the fund, and (in the words of Gray, J., in the Nesmith Case) "a discretionary power to make a disbursement of income, in the course of the management of the trust property, * * * restricted to such matters as tend to preserve it and make it efficient for earning purposes." I think that the mere fact that the money to be accumulated is the result of a continuance of a business is not material. As I have said, the statute is not aimed at the manner of the gain, but at the accumulation thereof. I can see no reason for that policy which should exclude accumulations of the gains of trade. Certainly the statute itself does not require or even warrant any such limitation of construction or interpretation.

But after a long and exhaustive discussion of authorities, the learned referee states that the American cases which he cites seem to hold that a beneficiary can prevent a business from being carried on by an executor, and that, on principle, it would seem that a testator who

creates a trust for a long term, and directs his executors to continue to employ his assets in his business during the trust, simply directs that the trust funds be subjected to extreme hazard, and that any beneficiary should have the right to object. And thereupon he concludes, in effect, that the business as to the beneficiaries was carried on as if by their consent, and so the property was not held in dead hand. In the first place, I do not read the American decisions to the effect that, when the testator directs the continuance of his business, the beneficiaries can arrest the directions of the will. Willis v. Sharp, 113 N. Y. 586, 21 N. E. 705, 4 L. R. A. 493, does not warrant the position of the learned referee. It is true that the court says that the executor is not bound to carry on the trade, and that existing creditors might interpose, but the reasons for the rule do not apply to beneficiaries. The particular executor named is not bound, because there enters in the element of personal contract, at least in the first instance; and the creditors may object because their right is payment from present assets, and not payment on the contingencies of a business enterprise. Obviously the beneficiary cannot range himself behind either of these reasons. Moreover, in the same case the court said:

"The courts, while they have sustained with substantial unanimity the validity of a direction of a testator in his will that his trade should be continued, whether his business was that of a sole trader or of a firm of which he was a member, have applied stringent rules of construction in ascertaining both the existence and extent of the authority of the executor."

The learned referee cites from Stewart v. Robinson, 21 Abb. N. C. 63, 69, 2 N. Y. Supp. 309, the expression of the court that "a direction by the testator to apply his estate to a partnership for five years would have been clearly illegal as against his creditors, and even his next of kin and devisees." But the court was plainly referring to the period of five years, as one of the points made by the counsel for the respondent was that such provision was a suspension of absolute ownership, not limited on life. I find in this statement no authority for the proposition that a beneficiary could arrest a direction for a continuance of the business otherwise valid. The learned referee also cites the expression in Bell v. Hepworth, 134 N. Y. 442, 31 N. E. 918, that a statement in Stewart v. Robinson, supra, was "based on the assumption that the continuance of the business was lawful as to those interested in it, either as lienors or actors, so long as they assented to it." I assume that he draws the inference that the continuance of the business was not lawful if they objected to it; i. e., they could arrest it. But the "lienors or actors" referred to were clearly either the executors or the creditors, as reference to the context will show. I can have no quarrel with the proposition that the executors or the creditors might have arrested the execution of the contract, in view of the doctrine of Willis v. Sharp, supra. But I repeat that there is a material difference in the status of an executor who might decline to continue the business or a creditor who might insist that his debt be not thus imperiled, on the one hand, and a beneficiary, on the other. In Bell's Case, supra, the court also said:

"The court in Stewart's Case assumed that a provision for the continuance of a business, if made in the will of a deceased partner, would be valid, and held that, if the life provision in the contract of partnership was also valid, its terms," etc.

Moreover, in Stewart's Case (Stewart v. Robinson, 115 N. Y. 328, 22 N. E. 160, 163, 5 L. R. A. 410), at page 336, 115 N. Y., and page 162, 22 N. E., 5 L. R. A. 410, the court say:

"The general subject of the construction of language giving power or authority for the continuance of a trade after the death of one member of a firm has also been under consideration in this court, and its conclusion expressed in the decision of Willis v. Sharp, 113 N. Y. 586, 21 N. E. 705, 4 L. R. A. 493. Among other cases referred to was Burwell v. Mandeville's Executors, 2 How. 560, 11 L. Ed. 378, and the general proposition there laid down restated. It was assumed that the courts with reasonable unanimity sustained as valid a direction in the will of a testator that his trade should be continued, whether his business was that of a sole trader, or of a firm of which he was a member, but it was held that a mere power to carry on the testator's trade," etc.

In Saperstein v. Ullman, 49 App. Div. 446, 63 N. Y. Supp. 626, after speaking of the general rule that the death of a trader ends his business, the court say:

"There are instances, however, in which this rule has no application—as, for example, where the testator directs the executor to continue his business, and to devote the assets of his estate to that purpose. Such testamentary directions are often made, and, when expressed in unequivocal language, they will be upheld and enforced by the court."

The learned referee says vhat the general rule, of course, is that a person who receives a bounty from a testator is bound by the conditions which he imposes; and he cites Dowse v. Gorton (1891) App. Cas. 190, 204, and Brooke v. Brooke, L. R. 2 Ch. 606, to sustain this view. And he notes in the former case Lord MacNaghten said, "It was a just observation on behalf of the appellants that an executor may be liable to creditors for conduct which no beneficiaries could question, for beneficiaries are bound by the terms of a will, while creditors are not," while in Brooke v. Brooke, supra, Kekewich, J., says: "No doubt, in Dowse v. Gorton there was a power in the will to carry on testator's business; but, as was pointed out by Lord MacNaghten, that direction, though binding on the beneficiary, was not binding on the creditors." But the learned referee seems to think that the rule is different with us, or at least that it is not definitely settled. His citation from Parsons on Partnership (section 346) refers to cases wherein the trustees chose to continue, and has, I think, no reference to cases where the testator directs that there shall be a continuance. None of the American decisions cited by the learned author in his note to the section presents the case of a direction for the continuance of a business.

There is authority that such a direction to continue the business created a trust. Perry on Trustees, § 121; Ferry v. Laible, 31 N. J. Eq. 566. In this case the court say:

"A testator, by direction to continue his trade or business, creates a trust estate, which the court will keep separate, and apply exclusively to the purposes of the trust. Owen v. Delamere, 15 Eq. Cas. 139. This is the foundation doctrine of all the cases. Ex parte Richardson, 3 Madd. 138; Thompson

v. Andrews, 1 Myl. & K. 116; Cutbush v. Cutbush, 1 Beav. 185; McNeilie v. Acton, 4 De G. M. & G. 744."

Johnson v. Lawrence, 95 N. Y. 154, arose upon this will. Finch, J., evidently regards the duties imposed upon the executors as arising from a trust. Thus he writes:

"On the contrary, the ordinary duty of an executor to turn the estate into money was suspended at the outset, and in its room was put the duty of carrying on the business with all the assets on hand. That duty began at once. As a trust duty, it sprang into life at the same instant as the executorship, and inextricably blended with it. * * * To make a division at the death of Florence was a clear duty put upon the executors. To enable them to effect that purpose, they were empowered, as executors, to sell the real estate and close up the business. Until then, the duties, blended at the beginning, were to remain united, and the trust was not separate and distinct, but characterized and modified the duties of the executors. * * * As in the case of Hall v. Hall, 78 N. Y. 535, the trust duty is imposed upon the executors to dispose of the real estate preparatory to distribution. * * * The facts in Hall v. Hall showed that the testator denominated his executors in different parts of the will 'trustees,' and that circumstance is relied upon; but this court said that the words were used interchangeably and as synonymous, and that the bequest of the fund to the executors and their survivors and successors indicated rather a trust attached to the office, than imposed upon the individuals."

And in Hall v. Hall, 78 N. Y. 535, referred to by Finch, J., the court quotes from Mann v. Lawrence, 3 Bradf. Sur. 424:

"The investments are made by the executors in their trust capacity, and, though they cannot receive double commissions when they are both executors and trustees, yet they may receive full commissions as executors."

Thus it would seem that, so far as the fund itself is concerned, the court regarded it as in the nature of a trust; and it is immaterial whether it was attached to executors, or to them as individuals, when we consider it with reference to the rights of beneficiaries. In Hamlin v. Mansfield, 88 Me. 131, 33 Atl. 788, the court held that a similar provision in a will "would make the executor a trustee of that portion of his estate which was part of the capital of the firm." When this will became operative, the statute permitted an express trust to receive the rents and profits of lands, and to apply them during the life or for any stated time, subject to the rules prescribed in the first article of this title, while trusts for any purpose were permitted as to personal property. The language used in Downing v. Marshall, 23 N. Y. 376, 80 Am. Dec. 290, as already cited, is applicable again. The mere omission to name the executors as trustees, or to use formal words to clothe them with the power of trustees, is not controlling. The scheme of the testator is the touchstone. Tobias v. Ketchum, 32 N. Y. 319; Matter of Dewey, 153 N. Y. 63, 46 N. E. 1039; Morse v. Morse, 85 N. Y. 53; Ward v. Ward, 105 N. Y. 68, 11 N. E. 373.

If, then, this fund, under the directions of the testator, is to be regarded as a trust, I do not understand the rule to be that these daughters defendant could elect to have the trust terminate; i. e., could prevent the executors from continuance of the business by interposing an objection thereto. Cuthbert v. Chauvet, 136 N. Y. 326, 32 N. E. 1088, 18 L. R. A. 745; Lent v. Howard, 89 N. Y. 169; Wood v. Wood, 5 Paige, 299; Burrill v. Sheil, 2 Barb. 457,

468; Douglas v. Cruger, 80 N. Y. 15. I cannot think that the mere fact that the direction for the continuance of a business may put the fund to the hazard incident to any trade venture, however sound, could avail the beneficiary in seeking to prevent the execution of the scheme of the testator. For Denike v. Harris, 84 N. Y. 89, decides that:

"The creator of a trust requiring the investment of money may ·designate how the instrument may be made, and what security may be taken, and he may dispense with all security. * * * It matters not that the sum thus loaned is put in some jeopardy—subjected to such risks as ordinarily attend the carrying on of any business or the loaning of money upon merely personal security."

See, too, Clark v. St. Louis, Alton & Terre Haute R. Co., 58 How. Prac. 21, 23.

There is a further consideration: If this direction of the testator were regarded as but for an investment, it is well settled that there could be no change of an investment but with the consent of all parties interested. Can it be said that these adult defendants were, subsequent to the death of the testator, the only persons interested in the investment of the fund? The fund is not to be distributed until the death of the wife and of the daughter Florence, when it is to be divided among the children of the testator, or their descendants, if any have died leaving children, per stirpes. In Wood v. Wood, supra, the court said:

"As to the questions which were raised upon the argument as to the power of this court to divert the investment from England, there is one conclusive answer, and that is that such a change could only be made with the assent of all parties interested."

See, too, Prentice v. Janssen, 79 N. Y. 478, 485; Greenland v. Waddell, 116 N. Y. 234, 246, 22 N. E. 367, 15 Am. St. Rep. 400; Hetzel v. Barbour, 69 N. Y. 1, 11; Perry on Trusts (4th Ed.) 920; Lewin on Trusts (1st Am. Ed.) c. 25, p. 872.

The learned referee draws an analogy between the testator's business and a corporation, after citing the opinion of Cullen, J., in Matter of Rogers, 22 App. Div. 428, 48 N. Y. Supp. 175, and says:

"This opinion practically admits that the statute of accumulations could be evaded by creating a corporation. * * * But why cannot it be evaded? Obviously, for the reason stated by the Court of Appeals in the same case on appeal."

In the first place, Cullen, J., does not write that the statute could be "evaded." His words are:

"The only way that this provision against accumulations can be avoided (I do not say evaded) is through the medium of a corporation, for there the legal ownership by the corporation is interposed between the shareholder and the property."

Further, the Court of Appeals, in its decision in the same case (161 N. Y. 108, 55 N. E. 393), does not state the reason. Haight, J., simply holds that the plant, with necessary tools, fixtures, and machinery, of a manufacturing business, is one of the things to which earnings may be devoted, and that such devotion may be deemed fairly within the contemplation of a testator in creating trusts in capital stock of a corporation, and concludes that the testator must

have contemplated that "a reasonable amount would be retained by the directors for that purpose." Even in the case at bar the testator may be said to have contemplated, as any sensible man, that his business would entail expenses. He has expressed the idea by the use of the words "income and profits, gains, surplus income," in contradistinction to "income," the meaning whereof I have heretofore attempted to show. I think that these expressions imply the payment of incidental expenses of the business. But there is no indication that the testator had any thought of avoiding the statute, if he could have done so. For, as I have said, the ultimate purpose was to devote the surplus income to his wife's maintenance and his children's support. The postponement of payment of the whole surplus income to his children was not primarily for any purpose of his business. It was to be accumulated for a fixed period, and invested in the business, not because the business needed it, but because the children were not to receive it until they arrived at a fixed, mature age. Its disposition was an investment, meanwhile, not a devotion to a trade purpose. I think that Cullen, J., gives the answer to the query of the learned referee in his opinion, as follows:

"The only way that this provision against accumulations can be avoided (I do not say evaded) is through the medium of a corporation, for there the legal ownership by the corporation is interposed between the shareholder and the property. Technically, though also legally, the specific thing which is the subject of the trust is not an interest in the property of the corporation, but in the shares of the corporation. The identity of the subject-matter of the trust therefore remains the same, though its value may be vastly enhanced by accumulations from income or profits which would not be permitted in a case of the bequest or devise of specific property or specific funds."

Certainly there is no analogy between the stock of a corporation and the firm business of Garner & Co. that makes this language of definition of the essential differences applicable to the mere copartnership of Garner & Co. The sole analogy is that both a business corporation and a business copartnership carry on business.

The learned referee, referring to the character of the accumulations, says:

"The general rule, in the absence of fraud, is, as stated in Sproule v. Bouch, L. R. 29 Ch. Div. 635, quoted by Judge Cullen in Matter of Rogers, supra, that what the company says is income shall be income, and what it says is capital shall be capital."

But in Hascall v. King, 162 N. Y. 144, 56 N. E. 517, 76 Am. St. Rep. 302, Parker, C. J., quotes with approval the words of Cullen, J., in the Rogers Case:

"But if a testator's intent is to make that principal which is income in the case of a trust of the nature of the one before us, such intent is not in conformity with law, but in express contravention of it."

In re Sands' Will (Sur.) 3 N. Y. Supp. 67, is a case directly in point, and, as the learned counsel for the appellants have pointed out, it is cited by Mr. Chapin, in his book, at sections 258, 407, 491, and by Judge Thomas, in his book on the Law of Estates, at pages 503, 506, 527. See, also, Horndorf v. Horndorf, 13 Misc. Rep. 343, 34 N. Y. Supp. 560, opinion by Adams, J.

I agree with the learned referee that the plea of res adjudicata should not prevail. It is based upon several judgments in actions brought by the executors from time to time in this court to have their accounts passed and adjudicated. I fail to find in any complaint, answer, or record, that the question of the validity of these provisions now attacked was ever raised, mooted, or discussed, or that any judgment ever directly determined that question. The learned referee is within bounds when he states, "It was never suggested and apparently never thought of by anybody." Indeed, the learned counsel and guardian for the respondents, though insisting that "these judgments involved the conclusion or the determination by the court that the provision in the will now claimed to be void was valid," are frank enough to admit that "it is true that in none of these actions was the point made on behalf of the adult defendants that the provision of the will was void as contravening the statute against accumulations." The respondents mainly rely upon the general rule stated in Pray v. Hegeman, 98 N. Y. 351, approved in Reich v. Cochran, 151 N. Y. 122, 45 N. E. 367, 37 L. R. A. 805, 56 Am. St. Rep. 607. Examination of Pray's Case shows that the judgment relied on as a bar was in Moore v. Hegeman, 72 N. Y. 376. Moore v. Hegeman was brought to construe a will on the allegation that it was invalid, in that it "unlawfully suspended the power of alienation, and otherwise," and the prayer was for voidance, and for an award to the plaintiff of the one-third share of the residuary estate and all of the accumulations. The fourth clause of the will provided for accumulations during minorities. The defendant executor affirmatively took issue as to the validity of the will, and the court adjudged that the will was valid. In the opinion of the Court of Appeals, Miller, J., said, "A question is also presented as to the effect of the sixth subdivision of the fourth clause of the will, which provides for a partial accumulation during the minority of the children," and then proceeded to discussion and decision. Moore v. Hegeman, supra, presented by pleading and by answer the same issue that was presented and adjudicated in Pray v. Hegeman. And consequently when the court came to that question in Pray v. Hegeman it applied the doctrine of res adjudicata. That this is so is evident from the opinion of Andrews, J., in the latter case. The learned judge says:

"It is undoubtedly true that the object of the plaintiff in bringing the action was to procure a judgment annulling the entire trust as illegal and invalid, and that the reference in the complaint to the accumulations was not primarily with a view to procuring a judgment as to the validity of the provision for accumulation, independently of the validity of the trust as to the body of the share, but only as a part of the relief to which the plaintiff would be entitled, as incident to the main relief sought. But the plaintiff, by asking larger relief than that to which he was entitled, was not precluded from obtaining any measure of relief less than that which he demanded in his complaint, which was within the scope of the action. The first action was, in general terms, to recover the whole trust estate, on the ground that the entire trust was void. The present action is to recover the accumulations, on the ground that the trust, though otherwise valid, was, as to the accumulations, void. If the plaintiff in the first action was entitled to a judgment establishing his right to the accumulations, then manifestly this action is for the same cause. It must be true, as a general principle, that subordinate rights or questions which are branches of a larger right or

question put in issue, and which, under the pleadings, may be decided, and as to which relief may be given in the action, although the principle of main relief is denied, are determined by a judgment on the merits denying all relief."

The discrimination between Pray's Case and the case at bar is that in the prior actions the question now up was not pleaded or put in issue or raised in any form on the trials, or adjudicated in the judgment. The Court of Appeals has cogently stated the principle of the doctrine of res adjudicata in Rudd v. Cornell, 171 N. Y. 114, 63 N. E. 823, per Martin, J.:

"A judgment does not operate as an estoppel in a subsequent action between the parties as to immaterial or unessential facts, even though put in issue by the pleadings and directly decided. It is final only as to such facts as are litigated and decided, which have such a relation to the issue that their determination was necessary to the determination of that issue. House v. Lockwood, 137 N. Y. 259, 268 [33 N. E. 595]; Stannard v. Hubbell, 123 N. Y. 520 [25 N. E. 1084]. 'In order that a judgment should have the effect claimed, it is not enough that the party produce a record showing a judicial determination of the same question litigated in his favor, but it must also appear that it was rendered upon the merits, upon a material point, and substantially upon the same facts presented in the subsequent case.' Shaw v. Broadbent, 129 N. Y. 114, 123 [29 N. E. 238]; Converse v. Sickles, 146 N. Y. 200, 208 [40 N. E. 777, 48 Am. St. Rep. 790]; Genet v. Del. & Hud. Canal Co., 163 N. Y. 173 [57 N. E. 297; Id., 170 N. Y. 278 [63 N. E. 350]. * * * The judgment is the bar, and not the preliminary determination of the court; and, although a judgment has been entered in a prior action, it does not prevent the relitigation of a fact litigated and found in such action, which was wholly irrelevant to the issues therein, and did not enter into and was not involved in the final judgment. Springer v. Bien, 128 N. Y. 99 [27 N. E. 1076]; Lance v. Shaughnessy, 86 Hun, 411 [33 N. Y. Supp. 515] affirmed on opinion below in 153 N. Y. 653 [47 N. E. 1108]; Stokes v. Stokes, 155 N. Y. 681, 692 [50 N. E. 342]."

The same learned judge, writing for the court in Reynolds v. Ætna Life Ins. Co., 160 N. Y. 635, 651, 55 N. E. 305, says:

"The conclusive character of a judgment as a bar extends only to the identical issues which were tried in the original action. They must be the same in each action, not merely in name, but in fact and in substance; and the party seeking to avail himself of a former judgment as conclusive evidence or as a bar in a subsequent action must show affirmatively that the question involved in the second was material and determined in the former, as a former judgment would not operate as an estoppel in a subsequent action as to immaterial and unessential facts, even though put in issue and directly decided. It is final only as to facts litigated and decided which relate to the issue, and the determination of which was necessary to the determination of that issue. Palmer v. Hussey, 87 N. Y. 303: Bell v. Merrifield, 109 N. Y. 202 [16 N. E. 55, 4 Am. St. Rep. 436]; Hymes v. Estey, 116 N. Y. 501 [22 N. E. 1087, 15 Am. St. Rep. 421]; Lewis v. O. N. & P. Co., 125 N. Y. 341 [26 N. E. 301]; Rose v. Hawley, 133 N. Y. 315 [31 N. E. 236]; House v. Lockwood, 137 N. Y. 259 [33 N. E. 595]; Ward v. Boyce, 152 N. Y. 191, 201 [46 N. E. 180, 36 L. R. A. 549]."

With the burden upon him, the plaintiff, to my mind, fails to show that any of the judgments in any of the prior proceedings comes up to the standards of the rule. The learned counsel and guardian ad litem, after the admission I have quoted, say:

"But in the action of 1879 the executors come into court, set forth the whole will, and ask for a construction of their duties arising under this very paragraph third of the will. And the court, by its judgment, tells them

what their duties in that regard are, and that they are to carry on the business as directed in the will; that is, they are to add the surplus to the capital."

The phrase relied upon to indicate an adjudication that is res adjudicata is found in the second specific judgment. This is an answer to the allegation of the complaint:

"First. Upon the death of William T. Garner, what was the condition of the firm of Garner & Co., and who succeeded to the business, with power to carry it on, and with what liabilities and responsibilities?"

The entire paragraph of the judgment is:

"Second. And it is adjudged and determined that upon the death of William T. Garner the firm of Garner & Co., as it then existed, was dissolved, and that said plaintiffs, as executors and trustees under the last will and testament of William T. Garner, deceased, and they alone, succeeded to the business and property of Garner & Co., with the power and authority to carry on the business of Garner & Co. as directed in and by said last will and testament; that the business of Garner & Co. did not on the death of said William T. Garner, nor did the assets or property of Garner & Co., vest in said Samuel W. Johnson, as survivor of Garner & Co."

The question asked is, "Who succeeded to the business to carry it on?" The answer is, "The executors alone, with power and authority as directed by the will;" i. e., their power and authority is in the will. But now to say that because the court then answered that the general power to carry on the business was in the executors as against any others, pursuant to a will, therefore the court adjudicated upon the validity of every provision of the will, is to go beyond the scope and spirit of the question presented and the answer given. As the executors could carry on the business without accumulating all the gains and profits, there is no ground for implication. The respondents also contend that inasmuch as the judgment of the 1893 action contains a conclusion of law that Marcellite, having become 25, was entitled to one-third of the gains and profits, and that the same would be relatively true as to the other two daughters when arriving at the same period, respectively, this is the equivalent of a conclusion that until they arrived at that age they would not be entitled to the whole income. This is a corollary not warranted by the action. If the question directly presented had been, "When was Marcellite entitled to one-third of the profits?" and the answer given, "When she was twenty-five," then the respondents would be entitled to the legal inference that before that period she was not entitled to them. But this was one of the accounting actions. The issues did not raise any question whatever as to the validity of the will, nor was any such question litigated. The parties by their pleadings proceeded simply as upon an accounting on the basis of the will. The issues were sent to a referee, who reported upon the accounts, and the court adopted his findings upon its judgment. It is entirely natural, then, that, when the action was for an accounting on the acceptance of a will intact, the plaintiff here and there can find expressions which are indicative that the will was regarded as valid as the basis of the accounting. The question was neither raised, litigated, nor necessarily involved, no issue was presented which required a construction of the clause, and the various judgments are not conclusive. Authorities supra;

Honsinger v. Union Carriage & Gear Co., 175 N. Y. 229, 67 N. E..
436. Further, I think that the doctrine of Bowditch v. Ayrault, 63
Hun, 23, 17 N. Y. Supp. 281; Id., 138 N. Y. 222, 33 N. E. 1067—is
against the contention. The court construed a will wherein A. gave
the residuary estate to the trustee, with directions to sell and convert
it into money as fast as practicable, and to divide two-thirds of it
among the children "who may be living at the time of his death of
the brothers and sisters named, and to the descendants of such of said
children as may be deceased when said estate or any part thereof is
distributed, said two-thirds to be divided between all such children or
their descendants equally. * * * All the children of a deceased
person to receive collectively the portion to which their parent would,
if living at such distribution, be entitled." The court held that the
gift over to the children of the testator's brothers and sisters vested
at the time of his death, subject to be divested by the death of a
child thereafter, and the substitution of his or her descendants, if
any, but, if there was none, then the share remained vested, and, upon
the death of a child, formed part of his or her estate, to be disposed
of by his or her will, or, in the case of intestacy, as provided by statute.
The General Term said:

"The practical construction which for thirty years has been placed upon
this provision of the will by the trustee, and approved by the Surrogate's
Court, in seventeen separate distributions of the funds arising from such
trusts, has been that the remainder over did not vest in the testator's
nephews and nieces, or their descendants, until the necessary moneys had
been obtained from time to time for actual distribution, and that, in the event
of the death of any of the residuary legatees before the time of the distri-
bution, the legatee so dying had no vested interest in the residuary estate,
but that the share which such legatee would have been entitled to, if living,
vested upon such distribution in his descendants, if any, or, if none, then in
the other residuary legatees, and consequently was not payable, in any event,
to the personal representatives or assigns of the deceased legatee. * * *
In respect to the appeal by the plaintiff and by certain of the defendants
from that part of the interlocutory judgment which adjudges that the de-
fendants are not estopped by the former accountings from raising the question
here discussed, it is, as it seems to us, partly well taken, and partly not.
We are unable to find any proceedings upon the past accountings which
would estop one class of defendants, as against the others, to set up the claim
now made. To that extent we think that the conclusion of the referee was
correct, but as between such defendants and the plaintiff the same rule
would not apply, beyond the question of the distribution of the funds now
remaining undisposed of. So far as the trustee has actually paid out moneys,
he has acted with a full knowledge, and without objection coming from these
defendants. Still, if he has proceeded upon an erroneous basis, and yet has
funds sufficient in his hands to equalize the payments among the distrib-
utees, we know of no reason why he should not be required so to distribute
them, provided the court is wrong in its conclusions upon the main question.
But he cannot, under these circumstances, be held personally liable for any
loss."

And the Court of Appeals said:

"The part payment made by the trustees upon the several past accountings
made by them must remain unaffected by our decision herein. Those ac-
countings have been approved by the surrogate, and must be regarded as con-
clusive upon all past transactions, and payments covered by them. They
form no bar, however, to the proper decision of the question now presented
as to the distribution of the property now in the hands of the trustees."

See, too, Hafner v. Hafner, 34 Misc. Rep. 65, 69 N. Y. Supp. 456;
Id., 62 App. Div. 316, 71 N. Y. Supp. 1; Id., 171 N. Y. 633, 63 N.
E. 1117.

The child of Lady Gordon-Cumming that was living when the
action of 1892 was begun was not a party to that action. She was
presumptively entitled in remainder, and was therefore a necessary
party to any suit wherein her rights might be affected. Campbell v.
Stokes, 142 N. Y. 23, 30, 36 N. E. 811. Two of the infants now rep-
resented by the learned guardian ad litem were not parties to the suit
of 1892, and therefore the question as to their rights could not have
been determined therein. Shipman v. Rollins, 98 N. Y. 311. Estop-
pels must be reciprocal. Therefore the element of estoppel is lack-
ing. Nelson v. Brown, 144 N. Y. 384, 389, 390, 39 N. E. 355. In
Brewster v. Striker, 2 N. Y. 19, 41, the court say:

"But again the alleged admission was not of a fact, but of a conclusion
of law. The will itself, and the clauses it contains, are not, and never were,
as matters of fact, in dispute; but the construction of those clauses, and the
estate and interest taken by the devisees under them, upon which the con-
troversy turns, are questions of law. The grandchildren at the time of the
partition doubtless supposed the devise of the real estate to them to have the
legal effect to vest in them the estate in equal shares, as tenants in common,
in fee simple absolute, and on such erroneous supposition they acted in the
partition they assumed to make. But could that mistake of the law be urged
and used against either party, to estop him from afterwards claiming and
asserting his rights under the true exposition of the will?"

See, too, Chatfield v. Simonson, 92 N. Y. 209, 218; Hermann on
Estoppel, vol. 1, p. 3.

I think that the statutes of limitation do not apply. The learned
counsel for the respondent and the guardian ad litem show that the
answers of the adult defendants Marcellite and Edith, wherein they
ask affirmative relief, were first served on the plaintiff on June 10,
1899, on Florence, November 2, 1899, and on the guardian ad litem
on January 22, 25, 1900, and cite as authority Gilmore v. Ham, 142
N. Y. 1, 36 N. E. 826, 40 Am. St. Rep. 554. They contend that the
plaintiff is not the trustee of an express trust, and hence the case is
not without the operation of the statute, but that, even if there was an
express trust, the statute would bar the adult defendants, under the
authority of Lammer v. Stoddard, 103 N. Y. 672, 673, 9 N. E. 328,
and Wood on Limitations (3d Ed.) pp. 462, 464. And they insist,
too, that inasmuch as the plaintiff acts in his capacity as an executor,
executing a power, and not as a trustee, he is entitled to the shield
of the statute by the authority of Matter of Longbotham, 38 App. Div.
607, 57 N. Y. Supp. 118; Matter of Rogers, 153 N. Y. 316, 47 N. E.
589. The principle applicable is well stated by Van Vorst, J., in
Giraud v. Giraud, 58 How. Prac. 175, at pages 179, 180, as follows:

"But it is urged by the counsel for some of the defendants that this suit
is barred by the statute of limitations. In this connection it is stated that
the statute began to run immediately the will was proved, and that the cause
of action accrued at that time. It is quite true that the present action might
have been commenced at the time suggested, which is nearly fourteen years
ago. But in truth no rights have been lost to the defendant, and none
gained by the plaintiff, by an omission to bring this action before. The
corpus of the estate, in its entirety, is still in the hands of the trustees for
distribution; and I should hold that the right to ask for an adjudication upon

the will, and for a decree as to the rights of the parties thereunder, or of those entitled to the estate yet to be distributed, may well be brought at any time before a division of the estate is actually made in pursuance of the terms of the will."

I think that the right to a construction of the will is, within the expression of Gilmore v. Ham, supra, "a case of a continuing right accruing newly each day." There is nothing peculiar in this case which would make the statute of limitations properly applicable. The executor or trustee is accounting. Under the terms of the will, he is directed to add certain surplus income to the working capital, but the adult defendants seek such construction of the will as will add those accumulations to the sums heretofore paid to them between the years intervening their twenty-first and their twenty-fifth birthdays. The property is, in the eye of the law, in the trustees' hands, and not accounted for if the construction of the adult defendants prevail. The situation by analogy is within the controlling fact, as tersely stated by Peckham, J., in Matter of the Petition of Camp, 126 N. Y. 377, 27 N. E. 799, at page 389, 126 N. Y., and page 803, 27 N. E.:

"Although he may cease to be guardian upon the ward coming of age, yet so long as the property remains in his possession as guardian, and unaccounted for, he must remain liable to account. This is no hardship upon the guardian, nor can it be the means of sustaining stale claims against him as such."

There is no question of disturbing former accounts or surcharging them, save that the court directs a certain disposition of accumulation admittedly added to the capital of the estate. It is simply a question of the proper payment of an unlawful accumulation. So long as the executor or trustee holds the funds erroneously applied, the simple question is as to the legal application thereof; i. e., he can legally equalize. Bowditch v. Ayrault, supra. If the executor be regarded as a trustee, and I have heretofore discussed his status, then no further discussion is necessary, for the statute cannot avail him. Merritt v. Merritt, 32 App. Div. 442, 53 N. Y. Supp. 127, affirmed in 161 N. Y. 634, 57 N. E. 1117. I do not think that the plaintiff has repudiated his trust, so as to make the rule of Lammer v. Stoddard, supra, applicable. He has made a mistaken interpretation of the will. But this is not, as the learned counsel contend, a violation of the alleged rights, or an open disregard thereof. Legally, the plaintiff has not observed the rights, because he did not know that they existed, but he has not repudiated or violated them. So far as the statute of limitations is concerned, there does not exist the difference between an express trustee and an executor charged with trust duties as to permit the latter to invoke the statute when the full-fledged trustee was debarred. Mr. Wood, in his work on Limitations, writes:

"The reason why express trusts are treated as not being within the statute of limitations is because the possession of the trustee is presumed to be the possession of the cestui que trust."

And he also writes at section 205:

"Executors are technically trustees of the property of their testator, and consequently cannot, as against the beneficiaries under the will, set up the

statute of limitations to bar their claims so long as the relation exists." Citing authorities.

The learned author proceeds further:

"A legacy may be so held as to be a trust, and, where the executor has become a trustee of a legacy for the legatee, the ordinary rules that exist between trustee and cestui que trust apply, and the legatee will not be barred by any lapse of time. This happens more readily in the case where the executor is also expressly a trustee than where he is simply executor. The important point is that the plaintiff was charged, as a fiduciary, with the care, control, and management of the property, with a power of sale thereon, and that as such he has a relation of trust duty to the adult defendants."

See, too, Post v. Benchly, 48 Hun, 83.

Matter of Longbotham and Matter of Rogers, supra, do not involve any questions of trusts or of trust powers, but simply compulsory accountings by administrators.

I think the learned referee is correct in his decision that the daughters of the testator are entitled to the proceeds of the sale of the houses in New York and Staten Island, and of the household stuff referred to in the third paragraph of the will. I do not think that the proceeds of such property were intended to be added to the working capital of the testator's estate. There is no warrant, therefore, save the broadness of the general expression; but the general rule is correctly stated and well justified by the referee that a testator presumably only authorizes a continuance of his business with the part of his estate employed at his death, and that the authority to charge his entire estate must be specific and plain.

Finally, I think that the intention of the testator was to provide specifically for his wife, and for his children's support, education, and maintenance, until they arrived at the age of 25 years, respectively, and also meanwhile, in the discretion of his executor, to authorize the advancement of such further moneys as would conduce to the comfort and happiness of any child. Any advancements are to be charged against each child. At the age of 25 a child is to receive her full share of the profits of the business. I do not think the executors are required to charge separately, as against each child, the particular sum devoted to its support, education, and maintenance, but rather that the total sum is to be charged against profits. The testator does not so direct, and the omission is significant, in view of the fact that he immediately directs that the advancements are to be charged against them respectively. It is argued that the failure to segregate the expenses of support, education, and maintenance produces inequality. Not necessarily. Practically it may do so. But the mere differences in the keep and education of these children, presumably to be maintained in the same status of life, which may appear in charges for raiment, tuition bills, and living expenses, are not so great, in view of the very large estate, as to require a construction based upon their possible inequality. But advancements for comfort and happiness up to a period of 25 years present a different question. Schooling, living expenses, clothing, pocket money, and the like, between one child and another, would not be likely to present material variances. Advancements measured by the happiness and comfort of

young men and young women up to the age of 25 might well vary. Higher study, embarkation in business, marriage to a poor man, might require, in the judgment of the executors, material advancements for one not needed by another. Each child has attained 25 years, and the practical determination must be based upon this circumstance. Thereafter each was entitled to receive one-third of the profits of the business. So far as the testator directs accumulation during minority, the scheme is valid. It is void only as to the excess of accumulation beyond the period of maturity. Radley v. Kuhn, 97 N. Y. 26; Gilman v. Reddington, 24 N. Y. 9; Schermerhorn v. Cotting, 131 N. Y. 48, 29 N. E. 980. If it is valid as an accumulation for the benefit of infants during minority, and therefore ceases at majority, the question remains, what disposition must be made of the unlawful accumulation? I think that it cannot be held as a further trust for their benefit. Tweddell v. N. Y. Ins. & Trust Co., 82 Hun, 602, 31 N. Y. Supp. 764. It follows that there must be a present disposition thereof, and this, I think, must be a payment to the children of the testator, as due to them at the age of 21 years, respectively. Pray v. Hegeman, supra; Barbour v. De Forest, supra.

The judgment should be modified in accordance with this opinion, and, as thus modified, affirmed, with costs to all of the parties payable out of the estate. All concur.