DAINTREY v. EVANS et al.

(Supreme Court, Appellate Division, First Department. December 1, 1911.)

1. MASTER AND SERVANT (§ 70*)—CONTRACT OF EMPLOYMENT—CONSTRUCTION—"NET PROFITS."

The term "net profits," in a contract employing one to take charge of departments in a mercantile establishment for an annual salary and a per cent. of the net profits of the departments in his charge, means the profits realized in the departments, without deduction for interest on the capital invested therein.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 85; Dec. Dig. § 70.*

For other definitions, see Words and Phrases, vol. 5, pp. 4781, 4782; vol. 8, p. 7731.]

2. ACCOUNT STATED (§ 6*)—ASSENT OF PARTIES.

An employé, in charge of departments of a mercantile firm under a contract stipulating for an annual salary and a per cent. of the profits of the departments, received, every six months, statements of account prepared from the books of the firm. In some of the accounts no credit for profits appeared. He never raised any question as to the correctness of the accounts, and he had a running account with the firm, and his account was frequently overdrawn, and, though his attention was called thereto, he never disputed it. It did not appear that the books of the firm were kept from him. Held, that the account became an account stated.

[Ed. Note.—For other cases, see Account Stated, Cent. Dig. §§ 30–40; Dec. Dig. § 6.*]

3. ACCOUNT STATED (§ 19*)—ACTION FOR COMPENSATION—BURDEN OF PROOF.

Where an administrator, suing a mercantile firm for a balance due his intestate as his share of net profits, under a contract of employment stipulating for an annual salary and a per cent. of the profits, introduced in evidence semiannual statements of the account prepared from the books of the business and delivered to the intestate, he had the burden of showing that the intestate had objected to the statements, so as to prevent the account from becoming an account stated.

[Ed. Note.—For other cases, see Account Stated, Cent. Dig. § 91; Dec. Dig. § 19.*]

4. WITNESSES (§ 178*)—COMPETENCY—TRANSACTION WITH DECEASED PERSON.

Where an administrator, suing a mercantile firm for a balance due his intestate as his share of net profits of the departments of the business in charge of the intestate, under a contract of employment stipulating for an annual salary and for a per cent. of the profits of the departments, called the partners and questioned them as to transactions with intestate, as to his methods of doing business with the firm, the manner in which semiannual statements of account were prepared, and the condition of the firm books on which the statements were based, a question, asked a partner, as to whether intestate at any time objected to the statements, was not objectionable under Code Civ. Proc. § 829, prohibiting testimony of personal transactions with a decedent.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 722–725; Dec. Dig. § 178.*]

Appeal from Trial Term, New York County.

Action by Laura Daintrey, as administratrix of the estate of William Daintrey, deceased, against Alfred G. Evans and others. From a judgment of dismissal of the complaint at the close of plaintiff's case on trial, she appeals. Affirmed.

Argued before INGRAHAM, P. J., and CLARKE, SCOTT, MILLER, and DOWLING, JJ.

James H. Hickey, for appellant.
Henry Thompson, for respondents.

DOWLING, J. William Daintrey entered the employment of the firm of Arnold, Constable & Co. in 1877 and at the time of the death of Frederick A. Constable was in charge of its rug and carpet departments, both wholesale and retail. On July 1, 1905, the defendants, constituting the new firm, made an oral agreement with Daintrey by which he was to continue in charge of the same departments, receiving a salary of $8,000 per year, in addition to 5 per cent. of the net profits of the departments whereof he had charge. Thereafter Daintrey remained in the employ of the firm under this agreement until about January 1, 1909, when his connection therewith was terminated. He died May 27, 1909. During the continuance of his employment by the firm, semiannual statements showing the condition of his account therewith were furnished by the bookkeeper of the firm from their books, which are kept "confidentially."

Plaintiff, who is the administratrix of Mr. Daintrey, produced and offered in evidence six of the accounts rendered by defendants to plaintiff. The seventh, covering the first six months of 1908, not being produced by her (although she had the preceding and succeeding ones), a copy thereof produced upon the trial by defendants was offered by plaintiff in lieu of the missing one. Thus the plaintiff offered in evidence statements furnished to her intestate by defendants covering the entire period of his employment by them. These statements are itemized, containing debit and credit entries, and where profits were realized for the six months covered thereby they appear as an entry "Participation in profits," with the appropriate amount opposite the same. From the transcript of defendants' books, which is in evidence, it appears that before the intestate's 5 per cent. of the

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

net profits was computed, there was deducted from the profits made by the firm in these departments interest at the rate of 6 per cent. per annum upon the value of the stock carried therein.

The plaintiff now seeks to recover from defendants a balance claimed to be due her intestate as his share of the net profits; she contending that the defendants were not entitled under the agreement with intestate to deduct any interest upon the amount of capital invested in these departments, representing the stock carried therein, and that the term "net profits" should not be so construed as to permit such deduction. From a judgment dismissing her complaint at the close of her case, she now appeals.

[1] There is no doubt that the term "net profits," in the absence of any special agreement defining the same, means the balance remaining after deducting the outgo from the income, without deducting interest on the capital invested. So in Paine v. Howells, 90 N. Y. 660, it was said:

"We do not think that interest upon capital is an expense to be deducted in ascertaining net profits. Those profits themselves constitute the earnings of the capital, and may exceed or fall short of the legal rate of interest. They are the product of the investment, and the capital is used, not to earn interest, but profits. The cases between partners to which we are referred are not pertinent. Where all the partners put in equal amounts of capital, no question of interest arises. It comes up only to redress an inequality, and interest is allowed upon what practically is a loan. But here the plaintiff was not a partner. It was expressly agreed that he should not be, and he made his contract for a share of the net profits as compensation for his services, upon the assumption that the firm capital was in the business and to be used in its conduct and to produce profits."

In the same case it was held that a custom of merchants to so charge interest upon their capital could not be shown. So in Thorn v. De Breteuil, 86 App. Div. 405, 83 N. Y. Supp. 849, the court, quoting from Last v. London Assurance Corporation, 10 App. Cas. 438, adopted the interpretation of profits as "the incomings of the concern after deducting the expenses of earning them," or "income, of whatever character it may be over and above the costs and expenses of receipt and collection." Were the question presented to us one calling for the legal construction to be given to the term "net profits," we should therefore be required to hold that it meant the profit realized in the departments in question without any deduction therefrom by way of allowance for interest upon the capital invested therein.

[2] But we are still of the opinion that the dismissal of the complaint was proper, for it was competent for the contracting parties to apply their own construction of the agreement between them, and this they did by their course of action. Plaintiff had been in the employ of the firm in its varying membership for nearly 30 years, and remained in charge of these departments under the present partnership for 3½ years. Every six months he received the statements of account prepared from the books of the firm. It does not appear that these books were kept secret from him, or that they were so confidential as to exclude his examination thereof, nor can that be inferred. It does not appear that he ever made application to examine the books in order to verify the statements, or that he ever questioned the ac-

curacy of the statements themselves. In some of these accounts rendered no credit appears for participation in profits where none had been earned; but he is not shown to have ever raised any question or expressed any doubt regarding the same, during the periods of his employment by the defendants. He had a running account with them, and during the latter part of his employment his account was frequently overdrawn, and his attention was called thereto; but he is not shown to have ever disputed the same, or to have questioned the fact of such overdraft. Under these conditions the account between plaintiff and defendants became an account stated. Where an account is duly rendered, showing a balance, the party receiving it, and not objecting thereto within a reasonable time, will be deemed from his silence to have acquiesced therein, and will be bound by it as an account stated, in the absence of proof of fraud or mistake. Lockwood v. Thorne, 11 N. Y. 170, 62 Am. Dec. 81; Quincey v. White, 63 N. Y. 370; Harley v. Eleventh Ward Bank, 76 N. Y. 618; Manchester Paper Co. v. Moore, 104 N. Y. 680, 10 N. E. 861; Knickerbocker v. Gould, 115 N. Y. 533, 22 N. E. 573.

[3] The only remaining question is the objection which was made to the question put to Alfred G. Evans, one of the defendants:

"Did Mr. Daintrey at any time make any objection to the reception of these statements?"

The objection was based upon the provisions of section 829, Code of Civil Procedure. In our view of this case the answer given to this question, "He never made any objection to these statements," could be entirely disregarded, for the burden was on the plaintiff to show that, after the reception by her intestate of these semiannual statements and his retention thereof (evidenced by her production of them and their receipt in evidence at her request), he objected to the statements.

[4] But we do not think that the question was objectionable under section 829. The plaintiff had called all three members of the firm as witnesses, and had interrogated them as to transactions with intestate regarding his methods of doing business with the firm, the manner in which the statements were prepared, and the condition of the books themselves upon which these statements were based. Plaintiff had examined this very witness Evans as to the identity of the statements rendered the intestate and their accuracy, and had also elicited from him the statement that Daintrey's attention had been called to his overdrafts. We believe that this made competent the question quoted.

The judgment appealed from should therefore be affirmed, with costs. All concur.